No. 23-4031

In the United States Court of Appeals for the Ninth Circuit

OLYMPUS SPA; MYOON WOON LEE; SUN LEE; JANE DOE, patron; JANE DOES, employees 1-3,

*Plaintiffs - Appellants,*

v.

ANDRETA ARMSTRONG, Executive Director of the Washington State Human Rights Commission; MADISON IMIOLA,

*Defendants - Appellees.*

———————————————

On Appeal from the United States District Court for the Western District of Washington No. 22-CV-00340-BJR, Hon. Barbara Jacobs Rothstein

———————————————

## *AMICUS CURIAE* BRIEF OF WOMEN'S DECLARATION INTERNATIONAL USA IN SUPPORT OF NEITHER PARTY

Kara Dansky
WOMEN'S DECLARATION INTERNATIONAL USA
P.O. Box 21160
Washington, D.C., 20009
833-670-2474
president@womensdeclarationusa.com
*Counsel for Amicus Curiae*
*Women's Declaration International USA*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTEREST OF AMICUS CURIAE ...........................................................1

SUMMARY OF ARGUMENT ...................................................................2

ARGUMENT ...........................................................................................5

    I.    If the WLAD elevates "gender expression or identity" over sex, it violates the Equal Protection Clause of the 14th Amendment; but the WLAD also protects sex by exempting lawful classifications that are "based on sex" and "necessary for sexual privacy." ...........................5

        A.    Elevating "gender expression or identity" over sex constitutes unlawful sex discrimination under the Equal Protection Clause. ...................................................................................5

        B.    The WLAD exempts lawful classifications that are "based on sex" and "necessary for sexual privacy," which should protect Appellants' women-only policy. ...............................................10

    II.    Washington state cannot, as a practical matter, enforce *both* the "gender expression or identity" provision of the WLAD *and* its criminal laws prohibiting voyeurism and indecent exposure. ............12

        A.    Voyeurism ................................................................................14

        B.    Indecent Exposure ...................................................................16

    III.    The District Court used the term "transgender," and other related phrases, uncritically in its written decision. However, the term is a linguistic sleight of hand that: (A) obscures the material reality of sex and (B) entrenches regressive sex stereotyps. ...................................19

        A.    Obscuration of material reality ................................................19

        B.    Regressive sex stereotypes ......................................................24

CONCLUSION .......................................................................................27

CERTIFICATE OF COMPLIANCE ........................................................29

CERTIFICATE OF SERVICE ..................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. v. Sch. Dist. Martinsville*
    No. 22-1786 (7th Cir. Aug. 1, 2023) ...............................................................9

*Adams v. Sch. Bd. of St. Johns Cnty.*
    57 F.4th 791 (11th Cir. 2022) ......................................................8, 20, 22, 23

*Arizona Governing Committee v. Norris*
    463 U.S. 1073 (1983) .........................................................................................5

*City of Los Angeles Department of Water and Power v. Manhart*
    435 U.S. 702 (1978) ...........................................................................................5

*Craig v. Boren*
    429 U.S. 190 (1976) ...........................................................................................7

*Frontiero v. Richardson*
411 U.S. 677 (1973) ..............................................................................................5

*Green v. Miss United States of Am., LLC*
    52 F.4th 773 (9th Cir. 2022) .........................................................20, 23, 24

*Hardt v. Reliance Standard Life Ins. Co.*
    560 U.S. 242, 251 (2010) ...............................................................................11

*L.W. v. Skrmetti*
    No. 23-5600 (6th Cir. Sept. 28, 2023) .....................................................20, 22

*Neese v. Beccera*
    No. 21-cv-00163, (N.D.Tx. Nov. 22, 2022)................................................20

*Reed v. Reed*
    404 U.S. 71 (1971) ....................................................................................5, 6, 7

*United States v. Virginia*
    518 U.S. 515 (1996)...................................................................5, 8

*Weinberger v. Wiesenfeld*
    420 U.S. 636 (1975)......................................................................5

**Statutes**

Indecent Exposure
    Wash. Rev. Code § 9a.88, *et seq*. ............................................17
    Cal. Penal Code § 314, *et seq*............................................17, 18

Lewd or Lascivious Behavior
    Wis. Stat. § 944.20 ....................................................................19

Public Indecency
    Ohio Rev. Code § 2907.09 ........................................................15

Unruh Act
    Cal. Civ. Code § 51, *et seq*......................................................18

Voyeurism
    Wash. Rev. Code § 9A.44.115(2)(a) .........................................14

Washington Law Against Discrimination (WLAD)
    Wash. Rev. Code § 49.60 *et seq*. ........................................*passim*

**Regulatory materials**

City of Dayton Rev. Code Gen. Ord. (R.C.G.O.)
    §§ 32.01-32.21 and 32.99................................................16

**International authorities**

Decl. Women's Sex-Based Rts. (January 2019).....................................1

**Other materials**

Andrea Orwoll, *Pregnant "Persons": The Linguistic Defanging of Women's Issues and the Legal Danger of "Brain-Sex" Language*
      17 NEV. L.J. 670, 693 (2017) ........................................................................25

Colin Wright, *A Biologist Explains Why Sex Is Binary*
      THE WALL STREET JOURNAL (Apr. 9, 2023)....................................................25

Complaint, City of Xenia v. Darren C. Glines
      22CRB01337 (Dec. 9, 2022).........................................................................15

Human Rights Campaign, *Glossary of Terms* .......................................................21

Jessica A. Clarke, *Sex Assigned at Birth*
      122 COLUM. L. REV. 1821, 1834-36 (2022) .................................................22

Kara Dansky, *Democrats Should Defend Sex-Based Rights for Women and Girls*
      THE LIBERAL PATRIOT (Nov. 12, 2023) ...........................................................3

Kathleen Stock, *Changing the concept of "woman" will cause unintended harms*
      THE ECONOMIST (Jul. 6, 2018) ....................................................................25

Kelsey Bolar and Andrea Mew, *Female student alleges she was raped in trans-inclusive bathroom at New Mexico middle school*
      THE POST MILLENNIAL (June 20, 2023) .......................................................13

Lee Brown, *Women-only spa forced to allow trans customers with penises even though everyone is naked*
      THE NEW YORK POST (June 9, 2023) ...........................................................15

Lindsay Kornick, *Judge clears trans woman Rachel Glines' indecent exposure charges due to 'body fat' coverage*
      THE NEW YORK POST (May 7, 2023) ...........................................................16

Merriam Webster, "privacy"........................................................................................11

Merriam Webster, "sexual" ........................................................................................11

National Institutes of Health, National Library of Medicine,
"Genitalia, Male" ...................................................................20

Olympus Spa, "Services" ...........................................................17

Risa Aria Schnebly, *Sex Determination in Humans*
THE EMBRYO PROJECT ENCYCLOPEDIA (Jul. 16, 2021) ...............25

Sheila Jeffreys, GENDER HURTS: A FEMINIST ANALYSIS OF THE POLITICS OF
TRANSGENDERISM (Routledge 2014) ..........................................25

Stonewall, *List of List of LGBTQ+ terms* ................................21

*Transgender person charged with indecent exposure at LA Spa*
ASSOCIATED PRESS (Sept. 2, 2021)..............................................17

Uniform Crime Reports, Federal Bureau of Investigation
"Crime in the U.S.," Table 42 ...................................................14

U.S. Sentencing Commission
"Quick Facts: Sexual Abuse Offenders" (2021) ..........................14

Wisc. Inst. For Law & Liberty, Inc.
Compl. To U.S. Dep't of Educ. Off. for Civil Rts. (June 14, 2023) .......18, 19

**INTEREST OF AMICUS CURIAE**

Women's Declaration International (WDI, of which WDI USA is one chapter) is made up of women from every walk of life—from law and government to the hard sciences, the culture-shaping professions, and the nation-building trades. We are lesbians, straight women, and bisexual women. We are mothers and child-free women. We are women of all races, ethnicities, and religions. We are more than 37,000 individuals and 518 organizations from 160 nations. But in our diversity we have a single message: Never again will we return to a world where women are defined by the patronizing, regressive, and oppressive stereotypes of gender, of which "gender expression or identity" is one form. To that end, we work to advance the Declaration on Women's Sex-Based Rights in law, policy, and society all over the world.[1]

WDI USA is interested in this appeal for three reasons. First, as an organization, we can hardly protect the rights of women and girls to associate exclusively with other women and girls if places of public accommodation like Olympus Spa are legally prohibited from excluding men and boys on the basis of their "gender expressions or identities." Second, we think states like Washington are on a collision course: They cannot, as a practical matter, enforce *both* public

---

[1]     *See* Decl. Women's Sex-Based Rts. (January 2019), https://www.womensdeclaration.com/en/.

1

accommodations laws like the Washington Law Against Discrimination (WLAD), Wash. Rev. Code § 49.60.040(27), *and also* state criminal laws like those prohibiting voyeurism and indecent exposure. Third, the linguistic destabilization caused by uncritical use of words like "transgender" and "gender expression or identity" is producing massive confusion throughout society and undermining decades' worth of case law designed to protect women and girls as a sex class. In view of its work on these issues, WDI USA has a meaningful perspective to offer the Court.

No counsel for a party authored this brief in whole or in part. No party or counsel for a party contributed money that was intended to fund preparing or submitting this brief. No person—other than WDI USA, its members, or its counsel—contributed money intended to fund preparing or submitting this brief. WDI USA is authorized to file this *amicus* brief because Appellants and Appellees have consented to its timely filing.

## SUMMARY OF ARGUMENT

Our entire society—globally, including the U.S. judiciary—appears to be gripped by the idea that there is a category of people called "transgender" who are somehow members of the opposite sex, members of a nonexistent third sex, or for whom the category of sex is irrelevant—even though most people know sex is real

2

and relevant in various situations.[2] One facet of this phenomenon is that laws are being amended to redefine sex (or, in the case of Washington state, sexual orientation) to include concepts like "gender expression" or "gender identity." The truth that must be confronted is that sex is a material reality affecting many aspects of human life, even if some people claim to have identities that are different from their sex.

A consequence of accepting the pretense that sex is not real or relevant is that places of public accommodation like Olympus Spa are being required to accommodate men (i.e., adult human males) in spaces designated for women and girls. This harms women and girls generally, and it particularly harms women and girls in spaces where nudity is either expected or mandated. That is exactly what happened in this matter—HW (a man) brought Olympus Spa before the Washington State Human Rights Commission (WSHRC) on allegations that the spa's women-only policy discriminates against him on the basis of his "gender expression or identity." HW prevailed before the WSHRC.

In this brief, *amicus* argues that elevating "gender expression or identity" above sex denies women and girls the rights to which they are entitled under the 14th

---

[2]     *See, e.g.,* Kara Dansky, "Democrats Should Defend Sex-Based Rights for Women and Girls: New national poll of 1,262 registered voters shows strong consensus in favor of female-only spaces and services," *The Liberal Patriot* (Nov. 12, 2023), https://www.liberalpatriot.com/p/democrats-should-defend-sex-based?utm_source=substack&utm_campaign=post_embed&utm_medium=email.

3

Amendment's Equal Protection Clause—rights that have been firmly established and entrenched after decades of litigation. However, the WLAD also has a provision exempting lawful classifications that are "based on sex" and "necessary for sexual privacy" that the District Court does not appear to have considered. If that provision protects Appellants' women-only policy, the WLAD might survive intermediate scrutiny under the Equal Protection Clause.

*Amicus* argues further that it is impossible for states like Washington to enforce *both* a public accommodations statute that elevates "gender expression or identity" over sex *and* its criminal code provisions on voyeurism and/or indecent exposure—how can a state possibly enforce its own criminal code provisions against leering at women's body parts and exposing male genitals in the face of a law allowing naked men to be in the presence of unconsenting naked women?

Finally, *amicus* explains why elevating "gender expression or identity" over sex both denies the material reality of biological sex and enshrines harmful stereotypes in the law.

*Amicus* is filing in support of neither party. If the District Court correctly ruled that the WLAD prohibits places of public accommodation from excluding men and boys from female-only spaces, then this is a matter for the Washington State Legislature to resolve. However, another provision of the WLAD, Wash. Rev. Code § 40.60.400(4)(a), exempts classifications that are "based on sex" and "necessary

4

for sexual privacy"; if this means Olympus Spa's women-only policy is lawful, the District Court's ruling should be reversed and remanded for further proceedings. Alternatively, this Court could remand the matter to the District Court for a *de novo* review of the arguments put forth herein.

## ARGUMENT

**I.** **If the WLAD elevates "gender expression or identity" over sex, it violates the Equal Protection Clause of the 14th Amendment; but the WLAD also protects sex by exempting lawful classifications that are "based on sex" and "necessary for sexual privacy."**

**A.** **Elevating "gender expression or identity" over sex constitutes unlawful sex discrimination under the Equal Protection Clause.**

The U.S. judiciary has a long and venerable history of applying intermediate scrutiny to claims of sex-based discrimination under the Equal Protection Clause for the purpose of protecting women and girls from unfair treatment under the law. *See, e.g., United States v. Virginia*, 518 U.S. 515 (1996); *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975); *City of Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702 (1978); *Arizona Governing Committee v. Norris*, 463 U.S. 1073 (1983); *Frontiero v. Richardson*, 411 U.S. 677 (1973).

This case law all stems from the landmark case of *Reed v. Reed*, 404 U.S. 71 (1971), where the Supreme Court held for the first time that the promise of equal

5

protection under the Constitution applies to women. At issue in that case was an Idaho statute that expressly granted men an advantage over women in the administration of probate estates. The Idaho law stated: "Of several persons claiming and equally entitled to administer, *males must be preferred to females*, and relatives of the whole to those of the half blood" (emphasis added). *Reed*, 404 U.S. at 72 n.2 and 73.

The parties were Sally and Cecil Reed, the parents of Richard Reed, who had died intestate. Because Richard had no spouse or children, the administration of his estate would fall to either Sally or Cecil, and because of the law's provision preferring males over females, the probate court granted the privilege to Cecil. Sally challenged that decision. Cecil prevailed throughout the lower courts, but the Supreme Court eventually ruled that the Idaho law unconstitutionally deprived Sally of her right to equal protection of the law on the basis of sex. In its ruling, the Court stated: "By providing dissimilar treatment for men and women who are thus similarly situated, the challenged section violates the Equal Protection Clause." *Id.* at 77.

The Idaho law blatantly and explicitly expressed a preference for male people over female people. The Supreme Court held, rightfully, that this violated the Constitution. So-called "gender expression or identity" had nothing to do with it. If "gender expression or identity" were in fact a subcategory of sex, Sally Reed could

6

simply have saved everyone a lot of time and declared to the probate and higher courts that she had the right to a preference in administering Richard's estate because she "expressed herself" or "identified as" male.

The argument, as valid today as it was in 1971, was that the Equal Protection Clause protects women and girls on the basis of sex because women and girls have historically been discriminated against on that very basis. The Supreme Court explicitly ruled that sex-based discrimination was subject to legal scrutiny. This Court should uphold this legacy by clarifying that sex (or in the current case, sexual orientation) cannot constitutionally be redefined to include "gender expression or identity" without eliminating women and girls as a sex class.[3] Society cannot pretend that sex-based oppression, both historical and contemporary, does not exist by simply ignoring the fact that women and girls exist as a coherent category of people.

Notably, in arguing that the Equal Protection Clause protects women and girls as a sex class, Sally Reed's legal team (which included the late Justice Ruth Bader Ginsburg) reminded the Supreme Court that equal *legal* rights for women and girls need not, and constitutionally *must not*, come at the expense of the *privacy* rights of women and girls. *See* Appellant Br. at 19, n.13 *Reed*, 404 U.S. The attorneys who

---

[3]    Wash. Rev. Code § 49.60.040(27) was amended in 2006 to define sexual orientation to include "gender expression or identity." *See* (2006) Wash. Sess. Laws p.7 (https://lawfilesext.leg.wa.gov/biennium/2005-06/Pdf/Bills/Session%20Laws/House/2661-S.SL.pdf?cite=2006%20c%204%20%C2%A7%204).

7

represented Sally Reed might be shocked to learn that Washington and Appellees are effectively, in fact, subjecting women and girls to precisely such privacy violations by ignoring that sex is a coherent category at all.

To survive an Equal Protection challenge, a distinction based on sex must satisfy intermediate scrutiny, which requires demonstrating that the distinction is substantially related to an important government interest. *See United States v. Virginia*, 518 U.S. 515, 524 (1996); *Craig v. Boren*, 429 U.S. 190 (1976). The WLAD discriminates on the basis of sex by redefining sexual orientation to include "gender expression or identity" and Appellees cannot present a *single* government interest—let alone an *important* one—in obliterating the legal category of sex or allowing men to access female-only spaces in places of public accommodation. If sex is eliminated as a coherent category in law, all efforts to remedy past, present, and future sex discrimination against women by way of the Equal Protection Clause will be ineffective due to the inability to differentiate between male and female.

Several federal courts have recently ruled that sex is real for the purpose of examining sex discrimination complaints under the Equal Protection Clause. For example, in *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022), the Eleventh Circuit ruled that public schools may constitutionally maintain single-sex bathrooms. That case involved a challenge by a female student to her school's bathroom policy, which said that each student must use either a bathroom designated

8

for his or her sex or a single-stall locked bathroom that members of either sex could use. The student alleged that this policy violated her right to equal protection because it discriminated against her on the basis of her "gender identity." The Eleventh Circuit ultimately rejected that contention.

To be sure, other federal courts have gone in the opposite direction. *See, e.g., A.C. v. Sch. Dist. Martinsville*, No. 22-1786 (7th Cir. Aug. 1, 2023), *cert. denied* No. 23-392 (Jan. 16, 2024). And the question in the present case is not whether a public school *may* separate students by sex for bathroom purposes, but rather whether a women-only place of public accommodation *must* accommodate men because of a state law that defines sexual orientation to include "gender expression or identity." Nonetheless, the principle is the same, and *amicus* would argue that any state action (whether public school policy or state law) that elevates a concept like "gender expression or identity" over sex discriminates against women and girls on the basis of sex, in violation of the Equal Protection Clause.

If the state of Washington, or Appellees, can demonstrate that forcing a women- and girl-only spa to accommodate men (whether or not they have undergone genital surgery) is substantially related to an important government interest, they should be invited to do so. *Amicus* understands that this argument was not pled in either the original or the amended complaint. This Court has the option to remand to the District Court to consider it *de novo*.

9

**B.**    **The WLAD exempts lawful classifications that are "based on sex" and "necessary for sexual privacy," which should protect Appellants' women-only policy.**

Notwithstanding the WLAD's prohibition on discrimination on the basis of sexual orientation (including "gender expression or identity"), the WLAD's reach is broader and includes a prohibition on discrimination on the basis of sex. *See* Wash. Rev. Code § 49.60.030(1).[4] The WLAD goes on to provide that the section does not affect "any otherwise lawful classification" that is both "based on sex" and "necessary for sexual privacy" (among other categories not relevant here). *See* Wash. Rev. Code § 49.60.400(4)(a). "Sexual privacy" not defined.

Sex means sex. If it didn't, the phrase "sexual privacy" would have no meaning; or, if "sex" means "gender," the phrase "sexual privacy" would mean something like "genderual privacy," which makes no sense at all. Accordingly, the remainder of this subsection assumes the word sex means actual biological sex.

There is nothing in the statute's legislative history to explain what the legislature may have intended when it codified the exemption for "sexual privacy." To the best of *amicus's* knowledge, the Washington state courts have not explained what it means in the context of a law prohibiting discrimination in places of public

---

[4]    The WLAD defines "sex" to mean "gender," *see* Wash. Rev. Code § 49.60.040(26). This is problematic in and of itself. As explained in Section III, *infra*, these words are not synonymous.

10

accommodation. Therefore, the Court must look to the plain meaning of the words in the phrase.[5]

The word "sexual" has two plain meanings: (1) of, or relating to, or associated with sex or the sexes (i.e., sexual differentiation); and (2) having or involving sex (i.e., sexual reproduction).[6] Presumably, the second definition is not applicable here and we are only dealing with a matter that relates to the sexes (male and female). The word "privacy" has three plain meanings: (1) the quality or state of being apart from company or observation or freedom from unauthorized intrusion; (2) secrecy, or pertaining to a private matter; and (3) a place of seclusion.[7]

Combining the plain meanings of those words leaves us with "sexual privacy" meaning something along the lines of "the quality or state of being apart from company or observation related to the sexes" or a "place of seclusion related to the sexes." Appellants have imposed a classification that is "based on sex," i.e., the spa is open exclusively to female humans (i.e., women and some girls—as discussed in

---

[5]    A court must "begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010), quoting *Gross v. FBL Financial Services Inc.*, 557 U.S. 167 (2009).

[6]    *See* Merriam Webster, "sexual": https://www.merriam-webster.com/dictionary/sexual.

[7]    *See* Merriam Webster, "privacy": https://www.merriam-webster.com/dictionary/privacy.

11

Section II, *infra*, the minimum age requirement is thirteen).[8] If Appellants' classification is both "based on sex" and necessary to protect "the quality or state of being apart from company or observation related to the sexes" (*amicus* contends that it is), it would appear that Wash. Rev. Code § 49.60.400(4)(a) protects it. This does not appear to have been considered during the course of the underlying litigation, but because the District Court was engaged in interpreting this important matter pertaining to sexual privacy in places of public accommodation, it should have been.

## II. Washington state cannot, as a practical matter, enforce *both* the "gender expression or identity" provision of the WLAD *and* its criminal laws prohibiting voyeurism and indecent exposure.

As the District Court explained in its decision granting Appellees' motion to dismiss the initial complaint, "[t]he WLAD 'is a regulatory law enacted under the legislature's police power to promote the health, peace, safety, and general welfare of the people of Washington.'" Op. No. 22-cv-00340 (June 5, 2023) at 2, quoting *Ockletree v. Franciscan Health Sys.*, 317 P.3d 1009, 1012 n.2 (Wash. 2014) (plurality opinion) and Wash. Rev. Code § 49.60.010. Unfortunately, the state of Washington cannot promote the health, peace, safety, or general welfare of *female*

---

[8]     *Amicus* understands that at some point, the spa changed its policy to accommodate men who have had genital surgery under pressure by the WSHRC.

people if the WLAD prohibits places of public accommodation from excluding men and boys from areas intended to be female-only.

It is not difficult to find examples in the U.S. of men and boys taking advantage of laws and policies allowing them to access women-only spaces on the basis of their "gender expressions" and/or "gender identities" to cause serious harm to women and girls. One such example occurred at a school in New Mexico in 2023. A 12-year-old girl started to experience mental health challenges and her mother brought her to counseling, which failed to alleviate her distress. Ultimately, it was revealed that her school has a policy in place that allows boys to be in the girls' bathroom on the basis of their "gender identities" and that a boy with such an identity raped her in the bathroom.[9]

But even when men and boys do *not* engage in such serious criminal activity when they access spaces intended exclusively for women and girls, they inevitably commit either voyeurism or indecent exposure or both because their very presence in such spaces–at least where nudity is expected–establishes the elements of those offenses.

---

[9]     *See* Kelsey Bolar and Andrea Mew, *Female student alleges she was raped in trans-inclusive bathroom at New Mexico middle school*, THE POST MILLENNIAL (June 20, 2023), https://thepostmillennial.com/exclusive-female-student-alleges-she-was-raped-in-trans-inclusive-bathroom-at-new-mexico-middle-school#google_vignette (The girl's mother found the words, "I was raped. I was raped. I was raped. F*cking kill me." in her diary).

### A.  Voyeurism

In Washington, a person commits voyeurism in the first degree if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs or films *either*: another person without that person's knowledge and consent while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy; *or* the intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place. *See* Wash. Rev. Code § 9A.44.115(2)(a).

There can be little doubt that any man who wishes to have access to women-only spaces where women are expected to be in a state of undress does so for the purpose of arousing or gratifying his sexual desire. Indeed, *amicus* can think of no reason *other than* arousing or gratifying his sexual desire for such a man to want access to women-only spaces.[10] That does not change if the man in question claims

---

[10]    Data about the sex of voyeurism perpetrators nationally is difficult to come by. This offense is typically a misdemeanor under state law, and no federal agency collects crime data to that degree of granularity. In 2019, 93.2 percent of sex offenders (for offenses other than prostitution) were male. *See* Uniform Crime Reports, Federal Bureau of Investigation, "Crime in the U.S.," Table 42 (https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/tables/table-42/table-42.xls). According to the U.S. Sentencing Commission, in 2021, 93.6 percent of offenders of federal sexual abuse offenses were men. *See* U.S. Sentencing Commission, "Quick Facts: Sexual Abuse Offenders" (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Sexual_Abuse_FY21.pdf. In the instant case, HW is clearly motivated by a

to have a "gender expression or identity" or if he says the magic words "I'm transgender." Even if such a man does not film or photograph the women in such a space, he clearly views them and their "intimate areas," and women have a reasonable expectation of privacy from men in such spaces.

These concerns are not theoretical. In December 2022, Greene County Ohio charged a man named Darren Glines with three counts of public indecency, Ohio Rev. Code § 2907.09, which is roughly similar to Washington's laws against indecent exposure (discussed *infra*).[11] On three separate occasions, the City of Xenia Police had received reports of a "naked male in the females' locker room" at the YMCA.[12] The reason the YMCA had given Glines access to the women's locker room was that he claims to have a woman "gender identity" and calls himself Rachel, and a local ordinance prohibits places of public accommodation from discriminating

---

sexual desire, having posted on social media shortly after prevailing before the WSHRC, "I did it! I got the main naked lady spa in the area to change their policies and allow all self-identified women access regardless of surgery and genitals." *See* Lee Brown, *Women-only spa forced to allow trans customers with penises even though everyone is naked*, THE NEW YORK POST (June 9, 2023), https://nypost.com/2023/06/09/women-only-spa-must-welcome-naked-trans-clients-with-penises/.

[11]     *See* Compl., City of Xenia v. Darren C. Glines, 22CRB01337, 1 (Dec. 9, 2022), https://cdn01.dailycaller.com/wp-content/uploads/2023/02/SKM_C55823020114320-1.pdf.

[12]     *Id.*

against people on the basis of their "gender identities." *See* City of Dayton Rev. Code Gen. Ord. (R.C.G.O.) §§ 32.01-32.21 and 32.99.

The charges were eventually dismissed after a judge concluded that as a factual matter Glines was too obese for his genitals to be observable and that therefore as a legal matter he could not be guilty of public indecency.[13] But even if that was true, at no point did anyone appear to express any concern that he was permitted to stare at women and girls in a state of undress. No woman or girl deserves to be gawked at while she is in a state of undress (or otherwise) by a man, and states like Washington should not enable this by prohibiting places of public accommodation from excluding men from women-only spaces where nudity is expected, including men who claim to have "gender expressions or identities." It is generally accepted in society that men should not be permitted to gawk at naked women in places of public accommodation. That should not change if the man claims to have a "gender expression or identity."

### B.      Indecent Exposure

In Washington, a person commits the offense of indecent exposure if he or she intentionally makes any open or obscene exposure of his or her person or the

---

[13]      *See* Lindsay Kornick, *Judge clears trans woman Rachel Glines' indecent exposure charges due to 'body fat' coverage*, THE NEW YORK POST (May 7, 2023), https://nypost.com/2023/05/07/trans-woman-rachel-glines-genitalia-exposure-charges-cleared-due-to-body-fat-coverage/.

person of another knowing that such conduct is likely to cause reasonable affront or alarm. *See* Wash. Rev. Code § 9a.88.010(1). A first offense is a misdemeanor *See* Wash. Rev. Code § 9a.88.010(2)(a), but Washington law elevates the offense to a gross misdemeanor if the person exposes him or herself to a person under the age of 14. *See* Wash. Rev. Code § 9a.88.010(2)(b).

*Of course* if women are in a nude spa and a man enters with exposed genitalia, such a man ought to know that his conduct is likely to cause reasonable affront or alarm. Furthermore, the minimum age requirement for obtaining services at Olympus Spa is thirteen.[14]  Therefore, purely as a matter of logic, any man who enters the spa nude necessarily commits the offense of indecent exposure, and if any 13-year-old is present at the time, such exposure constitutes a gross misdemeanor under Washington state's own law.

In a 2021 case remarkably similar to this one, a man (who claims to be a woman) named Darren Merager was charged with five felony counts of indecent exposure under Cal. Penal Code § 314 after entering the women-only section of Wi Spa in Los Angeles with a fully erect penis.[15] The counts were filed as felonies

---

[14]    Olympus Spa, "Services," https://olympusspa.com/lynnwood/services-lynnwood/ (last visited Feb. 19, 2024).

[15]    *See Transgender person charged with indecent exposure at LA Spa*, ASSOCIATED PRESS (Sept. 2, 2021), https://apnews.com/article/lifestyle-spas-981ee4ca037c6cc453fec8ce487f7b3c.

because he had previously been convicted of indecent exposure on two separate occasions, *see* Cal. Penal Code § 314(2). That matter is still pending. But Cal. Civ. Code § 51(b) prohibits discrimination based on sex "in all business establishments of every kind whatsoever." The law defines "sex" to include "a person's gender" and goes on to define "gender" to mean "sex, [including] a person's gender identity and gender expression," where "'gender expression' means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." *See* Cal. Civ. Code § 51(e)(5). How can California enforce its own indecent exposure law in that case if Mr. Merager was legally permitted to be in the women's section of the spa under a different provision of California law?

Another stunning example of a male person being permitted to commit the offense of indecent exposure because of his "woman gender identity" happened in Wisconsin in 2023. In March of that year, four freshman girls entered the locker room of their school and were surprised to find a male student in it. The girls report that because they "had a general idea that the student identifies as transgender," they proceeded to shower with their swimsuits on.[16] The male student turned toward

---

[16]     *See* Wisc. Inst. for Law & Liberty, Inc., Compl. to U.S. Dep't of Educ. Off. for Civil Rts. (June 14, 2023), https://will-law.org/wp-content/uploads/2023/06/2023-06-14-SPASD-OCR-Complaint-FINAL-w.-Exhibits-A-E68.pdf (last visited Feb. 19, 2024).

them, removed his clothes, exposed his genitals, and uttered the magic words, "I'm trans, by the way."[17] To the best of *amicus*'s knowledge, no law enforcement officers have investigated the matter or charged the (adult) male student with lewd or lascivious behavior under Wisconsin state law. *See* Wis. Stat. § 944.20.

At some point, the U.S. Supreme Court is going to have to grapple with the obscene things being perpetrated against women and girls by men and boys who claim to have "gender expressions" or "gender identities." For now, if, as the District Court ruled, the WLAD requires places of public accommodation, especially those where nudity is expected, to admit men on the basis of their "gender expressions or identities," the WLAD undermines Washington's ability to enforce its own criminal code.

### III. The District Court used the term "transgender," and other related phrases, uncritically in its written decision. However, the term is a linguistic sleight of hand that: (A) obscures the material reality of sex and (B) entrenches regressive sex stereotypes.

#### A.    Obscuration of material reality

In its orders granting Appellees' motions to dismiss, the District Court repeatedly used the word "transgender" and the phrases "transgender woman," "transgender women," and "transgender women with male genitalia" uncritically and without definition. According to the National Institutes of Health, male genitalia

---

[17]    *Id*. at 1 and 8.

consists of "the external organs (penis; scrotum; and urethra) and the internal organs (testis; epididymis; vas deferens; seminal vesicles; ejaculatory ducts; prostate; and bulbourethral glands)."[18] At no point did the District Court explain how individuals with male genitalia can be a type of women. It goes without saying that women do not have any of these organs. It is truly a testament to where we are as a society today that it must be said in the context of federal civil rights litigation that women don't have penises.

The bottom line is that with some exceptions, including this Court, *see Green v. Miss United States of Am., LLC*, 52 F.4th 773 (9th Cir. 2022), the Sixth and Eleventh Circuit Courts of Appeals, *see L.W. v. Skrmetti*, No. 23-5600 (6th Cir. 2023) and *Adams*, 57 F.4th, and the District Court for the Northern District of Texas, *see Neese v. Beccera*, No. 21-cv-00163 (N.D.Tx. Nov. 22, 2022), powerful swathes of our society appear to have accepted the idea that sex is not real or that if it is, it is less important than so-called "gender expression" or "gender identity" for virtually all purposes. But one hundred percent of human beings—all eight billion of us, including those affected by differences of sexual development, *see infra*—are either

---

[18]    National Institutes of Health, National Library of Medicine, "Genitalia, Male," https://www.ncbi.nlm.nih.gov/mesh?Db=mesh&Cmd=DetailsSearch&Term=%22Genitalia,+Male%22%5BMeSH+Terms%5D#:~:text=The%20male%20reproductive%20organs.,PROSTATE%3B%20and%20BULBOURETHRAL%20GLANDS) (last visited Feb. 19, 2024).

female or male, and none of us conforms 100 percent to the stereotypes imposed on us on the basis of sex. Society appears to have been persuaded that there is some coherent category of human beings called "transgender." There isn't.

The Human Rights Campaign (HRC) defines the word "transgender" to mean an "umbrella term for people whose gender identity and/or expression is different from cultural expectations based on the sex they were assigned at birth."[19] In a similar vein, the U.K. organization Stonewall defines the word "trans" to mean an "umbrella term to describe people whose gender is not the same as, or does not sit comfortably with, the sex they were assigned at birth."[20] Stonewall continues: "Trans people may describe themselves using one or more of a wide variety of terms, including (but not limited to) transgender, transsexual, gender-queer (GQ), gender-fluid, non-binary, gender-variant, crossdresser, genderless, agender, nongender, third gender, bi-gender, trans man, trans woman, trans masculine, trans feminine and neutrois."[21] But if the word "transgender" is an "umbrella term" that encompasses all of these various categories of people (and it is, according to both HRC and Stonewall, two of the most vocal organizations in the world championing the "rights

---

[19]    Human Rights Campaign, *Glossary of Terms* (last updated May 31, 2023), https://www.hrc.org/resources/glossary-of-terms.

[20]    Stonewall, *List of List of LGBTQ+ terms*, https://www.stonewall.org.uk/list-lgbtq-terms.

[21]    *Id.*

of transgender people"), it cannot possibly denote a coherent singular category of people.[22]

Furthermore, sex is not "assigned at birth." This expression was developed to indicate that medical professionals had "assigned" a sex to members of a tiny class of babies whose sex could not easily be determined because their genitals were ambiguous at birth, but who were all nonetheless genetically either female or male (these are known as people with differences of sexual development, or DSDs).[23] That objectively diagnosed condition is not related to the subjective feelings at the root of "gender identity" ideology, but "gender identity" advocates intentionally repurpose the phrase to imply that sex is arbitrary or not binary. Their use of the term is not aimed at scientific accuracy, but rather ideological advocacy.

In *Adams*, the Eleventh Circuit Court of Appeals was asked, among other things, to determine whether the word "sex" was ambiguous at the time of the enactment of Title IX of the Civil Rights Act. It had no trouble determining that it was not:

> Reputable dictionary definitions of "sex" from the time of Title IX's enactment show that when Congress prohibited discrimination on the basis of "sex" in education, it meant biological sex, i.e., discrimination between males and females. *See, e.g., Sex, American Heritage*

---

[22]    *Accord L.W. v. Skrmetti*, No. 23-5600 (6th Cir. 2023) (holding that "transgender people" are not a quasi-suspect class for Equal Protection purposes).

[23]    *See* Jessica A. Clarke, *Sex Assigned at Birth*, 122 COLUM. L. REV. 1821, 1834-36 (2022).

*Dictionary of the English Language* (1976) ("The property or quality by which organisms are classified according to their reproductive functions."); *Sex, American Heritage Dictionary of the English Language* (1979) (same); *Sex, Female, Male, Oxford English Dictionary* (re-issued ed. 1978) (defining "sex" as "[e]ither of two divisions of organic beings distinguished as male and female respectively, "female" as "[b]elonging to the sex which bears offspring," and "male" as "[o]f or belonging to the sex which begets offspring, or performs the fecundating function of generation"); *Sex, Webster's New World Dictionary* (1972) ("[E]ither of the two divisions, male or female, into which persons, animals, or plants are divided, with reference to their reproductive functions."); *Sex, Female, Male, Webster's Seventh New Collegiate Dictionary* (1969) (defining "sex" as "either of two divisions of organisms distinguished respectively as male or female," "female" as "an individual that bears young or produces eggs as distinguished from one that begets young," and "male" as "of, relating to, or being the sex that begets young by performing the fertilizing function"); *Sex, Random House College Dictionary* (rev. ed. 1980) ("[E]ither the male or female division of a species, esp. as differentiated with reference to the reproductive functions").

*Adams*, 57 F.4th at 812.

None of that has changed in the years since Title IX was enacted. The present case is not about Title IX, but about whether women ought to have the right to associate outside the presence of men in places of public accommodation, especially where nudity is expected. In either case, the word "sex" is not ambiguous, and neither is the word "women." This Court has an opportunity to follow the Eleventh Circuit in saying so explicitly.

This Court has in fact already assumed that the word sex is unambiguous. In *Green*, a man who claims to "identify as a woman" applied to be a contestant in

23

Oregon's Miss USA pageant. His application was denied because the pageant has a "natural born female" eligibility requirement and Green is not female. Green argued that the pageant's denial of his participation violated the state's nondiscrimination law, but the District Court for the District of Oregon ruled that the First Amendment protects the pageant's expressive association rights to remain female-only. *See Green*, 52 F.4th at 777. A panel of this Court ruled that the District Court was correct to rule in favor of the pageant, but that the proper protection was under the First Amendment's protection against compelled speech rather than the First Amendment's protection of association. Either way, that panel had no difficulty understanding what the word "female" means, nor did it have any trouble understanding the concept of a women-only gathering. At the end of the day, women are female and men are male. It isn't complicated, and this Court has an opportunity to set the record straight in a decision that uses accurate and precise language.

### B.  Regressive sex stereotypes

Despite the frequent use of "gender" as a euphemism for "sex" in polite conversation, "sex" and "gender" are not synonyms. The term sex refers to the observable fact of the distinction between female and male, based on genetic characteristics and reproductive biology. It is not a mutable status that everyone, as

24

if by accident or whim, is "assigned at birth."[24] Women and girls are of the female sex.[25] Sex is established at conception, when an X sperm or a Y sperm fertilizes an egg.[26] It is easily identifiable and recorded with nearly 100% accuracy.[27]

In contrast to sex, "gender" refers to a set of stereotypes imposed on women and men on the basis of sex. It is, in the words of feminist scholar Sheila Jeffreys, the "foundation of the political system of male domination."[28] For feminists, gender is purely a social construction loaded with various patriarchal roles, values, and expectations. For example, women (and only women) in our society are expected to wear high heels, even though it has been shown repeatedly that wearing high heels

---

[24]   *See* Kathleen Stock, *Changing the concept of "woman" will cause unintended harms*, THE ECONOMIST (Jul. 6, 2018), https://www.economist.com/open-future/2018/07/06/changing-the-concept-of-woman-will-cause-unintended-harms.

[25]   *See* Andrea Orwoll, *Pregnant "Persons": The Linguistic Defanging of Women's Issues and the Legal Danger of "Brain-Sex" Language*, 17 NEV. L.J. 670, 693 (2017) ("There are undeniable legal consequences of living in a female body. . . . Thus, woman specific language must be used in legal discussions of sex-based discrimination. . . .")].

[26]   *See* Risa Aria Schnebly, *Sex Determination in Humans*, THE EMBRYO PROJECT ENCYCLOPEDIA (Jul. 16, 2021), https://embryo.asu.edu/pages/sex-determination-humans.

[27]   *See* Colin Wright, *A Biologist Explains Why Sex Is Binary*, THE WALL STREET JOURNAL (Apr. 9, 2023) (refuting arguments that the existence of intersex people renders "sex" indeterminate).

[28]   Sheila Jeffreys, GENDER HURTS: A FEMINIST ANALYSIS OF THE POLITICS OF TRANSGENDERISM (Routledge 2014), 1.

impairs mobility and causes lower back pain, sore calves, foot pain, ankle sprains, constricted blood vessels, crooked feet, and weakened ligaments. Women are also expected to be sweet, docile, and subservient to men. This is all still true, notwithstanding the gains that feminists have made over the years. Feminists call for the abolition of gender because gender is a prison that keeps women in a position of subservience to men.

The concept of "gender expression or identity" manipulates offensive, regressive, sexist stereotypes for a particularly harmful purpose—to deny women the coherent, objective legal taxonomy that anchors the jurisprudence of women's rights. On its face, "gender identity" refers to a person's subjective *identity*, not to his or her *sex*, and appears to be defined by whatever feeling the person has of what it means to "be of the gender with which he or she identifies" and whatever expression the person gives that feeling. When men and boys claim to "express themselves as" or to "identify as" women or girls, "gender expression or identity" reduces women to regressive stereotypes about what it means to be female, deprives women of agency to define their role in the world for themselves, and subjects women to sex-based discrimination. It should never have been enshrined in law.

## CONCLUSION

Women have fought hard to be considered full members of society, on equal footing with men. Part of this equality depends on women having privacy from men under certain circumstances, including in places of public accommodation where nudity is expected. Until recently, everyone seemed to understand that men who invaded women's intimate spaces were rightly shamed and charged with criminal offenses. That understanding seems to have been forgotten with the emergence of "gender expression or identity" in law and society, including in Washington. Today, if a man like HW says that he "is transgender" or that he has a "gender expression or identity" different from his sex, our laws simply hold the doors wide open for him to access places where women and girls are nude or otherwise in a state of vulnerability.

If the District Court correctly interpreted the WLAD to mean that any man can access any women-only space in a place of public accommodation over Appellants' First Amendment objections, its decision should be affirmed and the Washington State Legislature should get to work immediately to fix this problem. If, on the other hand, the WLAD's provision exempting lawful classifications that are both based on sex and necessary for sexual privacy protects Appellants' ability to maintain a single-sex spa, the District Court's decision should be reversed and remanded. *Amicus* understands that none of the arguments put forth in this brief were

27

pled in either the original or the amended complaint. Accordingly, another option

for this Court would be to remand and order the District Court to conduct a *de novo*

review of them.

Dated: April 3, 2024        Respectfully Submitted,
*/s/ Kara Dansky*
Kara Dansky
WOMEN'S DECLARATION INTERNATIONAL USA
P.O. Box 21160
Washington, D.C.  20009
(833) 670-2474
president@womensdeclarationusa.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that:

1.     This brief complies with the type-volume limitation, as provided in Circuit Rule 32.2 and Fed. R. App. P. 29(a)(5), because, exclusive of the exempted portions of the brief as provided by Fed. R. App. P. 32(f), the brief contains 6475words.

2.     This brief complies with the type-face and type-style requirements, as provided in Fed. R. App. P. 32(a) and Circuit Rule 32 because the brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

3.     As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: April 3, 2024          */s/ Kara Dansky*
                              Kara Dansky

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. Participants in the case who are registered ACMS users will be served by the appellate ACMS system.

Dated: April 3, 2024        */s/ Kara Dansky*
                        Kara Dansky