No. 23-4031

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

OLYMPUS SPA; MYOON WOON LEE; SUN LEE;
JANE DOE, patron; JANE DOES, employees 1-3,

*Plaintiffs - Appellants,*

v.

ANDRETA ARMSTRONG, Executive Director of the Washington State
Human Rights Commission; MADISON IMIOLA,

*Defendants - Appellees.*

———————————————————

APPEAL FROM THE UNITED STATES
DISTRICT COURT OF WASHINGTON
Case No. 22-CV-00340-BJR
The Honorable Barbara Jacobs Rothstein

———————————————————

BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION,
AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON,
AND AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE
IN SUPPORT OF APPELLEES, THE STATE OF WASHINGTON,
AND AFFIRMANCE

———————————————————

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
Susannah Porter Lake
Adrien Leavitt
PO Box 2728

Seattle, WA 98111
P: (206) 624-2184
slake@aclu-wa.org
aleavitt@aclu-wa.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Aditi Fruitwala
915 15th Street NW
Washington D.C. 20015
P: (332) 204-2768
afruitwala@aclu.org

AMERICANS UNITED FOR SEPARATION OF
CHURCH AND STATE
Bradley Girard
Jenny Samuels
1310 L Street NW, Suite 200
Washington, D.C. 20005
P: (202) 466-3234
girard@au.org
samuels@au.org

*Counsel for Amici American Civil Liberties Union,
American Civil Liberties Union of Washington, and
Americans United for Separation of Church and State*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................... ii

IDENTITY AND INTEREST OF *AMICI CURIAE* .................................1

INTRODUCTION .....................................................................................2

ARGUMENT .............................................................................................3

  I.   The State's Enforcement of the WLAD Did Not Violate the Spa's Free Exercise Rights................................................................................................3

     A.   The WLAD is Neutral ..................................................................5

     B.   The WLAD is Generally Applicable ..........................................7

     C.   The WLAD is Rationally Related to a Legitimate Government Purpose..10

     D.   The WLAD, As Applied to the Spa, is Subject to Rational Basis Review11

  II.   The Ministerial Exception Does Not Apply. ..................................13

  III.  Accepting the Spa's Expansive Interpretation of the Free Exercise Clause Would Yield Untenable Results and Threaten the Legislature's Power to Protect Washingtonians..........................................................................................14

  IV.  Religious Justifications Used to Oppose Equality Claims Have Been Rejected by Courts in the Modern Era. ..........................................................................16

CONCLUSION ......................................................................................22

CORPORATE DISCLOSURE STATEMENT .......................................24

CERTIFICATE OF COMPLIANCE .....................................................25

CERTIFICATE OF SERVICE ...............................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bob Jones Univ. v. United States*,
  461 U.S. 574 (1983) .................................................................. 17, 18

*Brown v. Board of Education*,
  347 U.S. 483 (1954) ....................................................................17

*Brox v. Hole*,
  83 F.4th 87 (1st Cir. 2023) ...........................................................9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ................................................................ 5, 6, 7

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*,
  483 U.S. 327 (1987) ....................................................................10

*Does 1-6 v. Mills*,
  16 F.4th 20 (1st Cir. 2021) ..........................................................9

*Dole v. Shenandoah Baptist Church*,
  899 F.2d 1389 (4th Cir. 1990) .................................................. 18, 19

*EEOC v. Fremont Christian Sch.*,
  781 F.2d 1362 (9th Cir. 1986) ....................................................19

*EEOC v. Tree of Life Christian Schs.*,
  751 F. Supp. 700 (S.D. Ohio 1990) ............................................19

*Elane Photography, L.L.C. v. Willock*,
  309 P.3d 53 (N.M. 2013) ............................................................10

*Emp. Div. Dep't of Hum. Res. of Or. v. Smith*,
  494 U.S. 872, 877 (1990) ........................................................ 4, 5, 8

*Fitzgerald v. Roncalli High Sch., Inc.*,
  73 F.4th 529 (7th Cir. 2023) .........................................................2

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ....................................................... passim

*Ganzy v. Allen Christian Sch.*,
   995 F. Supp. 340 (E.D.N.Y. 1998) ........................................................20

*Hamilton v. Southland Christian Sch., Inc.*,
   680 F.3d 1316 (11th Cir. 2012) *overruled on other grounds* ...............20

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
   132 S. Ct. 694 (2012)...........................................................................14

*Kane v. De Blasio*,
   19 F.4th 152 (2nd Cir. 2021) ................................................................9

*King v. Governor of N.J.*,
   767 F.3d 216 (3rd Cir. 2014) ................................................................9

*Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch*,
   510 F.3d 253 (3d Cir. 2007) ...............................................................11

*Loving v. Virginia*,
   388 U.S. 1 (1967)...............................................................................19

*Mahmoud v. McKnight*,
   No. 23-1890, 2024 WL 2164882 (4th Cir. May 15, 2024) ...................2

*Marquis v. City of Spokane*,
   130 Wash. 2d 97 (1996)........................................................................6

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
   138 S. Ct. 1719 (2018)........................................................ 2, 8, 12, 13

*McClure v. Sports & Health Club, Inc.*,
   370 N.W.2d 844, 847 (Minn. 1985) ....................................................21

*McDaniel v. Paty*,
   435 U.S. 618 (1978)..............................................................................6

*McMahon v. World Vision, Inc.*,
   No. C21-0920JLR, 2023 WL 8237111 (W.D. Wash. Nov. 28, 2023), *appeal docketed,* No. 24-3259 (9th Cir. May 22, 2024)...................... 7, 10, 11

*Newman v. Piggie Park Enters., Inc.*,
   256 F. Supp. 941 (D.S.C. 1966), *aff'd in relevant part and rev'd in part on other grounds*, 377 F.2d 433 (4th Cir. 1967), *aff'd and modified on other grounds*, 390

U.S. 400 (1968).............................................................................. 19, 20, 22

*Ockletree v. Franciscan Health Sys.*,
179 Wash. 2d 769 (2014)........................................................................16

*Olympus Spa v. Armstrong,*
675 F. Supp. 3d 1168 (W.D. Wash. 2023) ...................................... 13, 14

*Phillips v. City of New York*,
775 F.3d 538 (2nd Cir. 2015) ...................................................................9

*Roman Cath. Diocese of Albany v. Vullo,*
No. 45, 2024 WL 2278222, at *4 (N.Y. May 21, 2024) .........................4

*State v. Arlene's Flowers, Inc*.,
193 Wash. 2d 469 (2019), *petition for cert. denied*, 141 S. Ct. 2884 (2021)passim

*Swanner v. Anchorage Equal Rights Comm'n*,
874 P.2d 274 (Alaska 1994) ...................................................................21

*Tassinari v. Salvation Army Nat'l Corp.*,
610 F. Supp. 3d 343, 349 (D. Mass. 2022)...........................................22

*Tingley v. Ferguson*,
47 F.4th 1055, 1064, 1089 (9th Cir. 2022), cert. denied, 144 S. Ct. 33 (2023) 8, 9

*Ungar v. N.Y.C Hous. Auth.*,
363 F. App'x. 53 (2nd Cir. 2010) .............................................................9

*United States v. Lee*,
455 U.S. 252, 257 (1982)...........................................................................4

*Vigars v. Valley Christian Ctr.*,
805 F. Supp. 802 (N.D. Cal. 1992)........................................................20

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2nd Cir. 2021) .....................................................................9

*Woods v. Seattle's Union Gospel Mission*,
197 Wash. 2d 231 (2021)........................................................................16

**Statutes**

Wash. Rev. Code Ann. § 49.60.010..........................................................7

iv

Wash. Rev. Code Ann. § 49.60.040(11)...................................................9

Wash. Rev. Code Ann. § 49.60.040(17)..................................................15

Wash. Rev. Code Ann. § 49.60.040(21)..................................................15

Wash. Rev. Code Ann. § 49.60.040(25)..................................................15

Wash. Rev. Code Ann. § 49.60.040(26)..................................................11

Wash. Rev. Code Ann. § 49.60.040(27)........................................... 11, 16

**Other Authorities**

Tobias Barrington Wolff, *Civil Rights Reform and the Body*,
    6 Harv. L. & Pol'y Rev. 201, 203-204 (2012) ....................................15

**Rules**

Fed. R. App. P. 29(a)(2)..........................................................................1

Fed. R. App. P. 29(a)(4)(E)......................................................................1

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit, nonpartisan organization with nearly two million members and supporters dedicated to the principles of liberty and equality embodied in the Constitution. The American Civil Liberties Union of Washington (ACLU of WA) is one of the ACLU's regional affiliates with over 150,000 members and supporters. As organizations that advocate for First Amendment liberties as well as equal rights for lesbian, gay, bisexual, transgender, and queer people, the ACLU and the ACLU of WA have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws. The ACLU and ACLU of WA have appeared as counsel-of-record or *amici* in many cases nationwide involving religious liberties and LGBTQ inclusion. *See*, *e.g.*, *State v. Arlene's Flowers, Inc*., 193 Wash. 2d 469 (2019), *petition for cert. denied*, 141 S. Ct. 2884 (2021) (counsel); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) (counsel); *Masterpiece Cakeshop, Ltd. v. Colo.*

---

[1] Under Fed. R. App. P. 29(a)(2), the ACLU, ACLU of WA, and Americans United for Separation of Church and State submit this brief without an accompanying motion for leave to file because all parties have consented to its filing. Under Fed. R. App. P. 29(a)(4)(E), Amici state that: (i) neither party's counsel authored the brief in whole or in part; (ii) neither party, nor their counsel, contributed money that was intended to fund preparing or submitting the brief; and (iii) no person other than Amici, their members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

1

*Civil Rights Comm'n*, 138 S. Ct. 1719 (2018) (counsel)*; Mahmoud v. McKnight*, No. 23-1890, 2024 WL 2164882 (4th Cir. May 15, 2024) (amicus); *Fitzgerald v. Roncalli High Sch., Inc*., 73 F.4th 529 (7th Cir. 2023) (amicus).

Americans United for Separation of Church and State is a national, nonpartisan organization that for over seventy-five years has brought together people of all faiths and the nonreligious who share a deep commitment to religious freedom as a shield to protect, but never a sword to harm others.

## INTRODUCTION

This case is about whether a women-only spa open to the general public can maintain a policy of prohibiting transgender women from using its services in violation of a Washington state nondiscrimination law. It cannot. Additionally, the First Amendment does not authorize the Spa's discriminatory policy.

H.W., a transgender woman, sought services at Olympus Spa, a Korean spa in Washington state. 1-ER-5. The Spa denied H.W. entry, citing its policy of excluding all transgender women who had not "gone through post-operative sex confirmation surgery." 1-ER-4-5. H.W. filed a complaint with the Washington Human Rights Commission, and, following settlement with the Commission, the Spa rescinded its discriminatory policy. 1-ER-5-6.

The Spa, its owners, and some of its employees (collectively "the Spa") then brought this suit alleging that the enforcement of the Washington Law Against

2

Discrimination (WLAD) against them violated their First Amendment rights to free exercise of religion, free speech, and free association. 1-ER-7. The lower court granted the State's Motion to Dismiss, finding that the Spa was unable to state any claim. 1-ER-14-15. *Amici* agree with the court's decision on all counts and write specifically to discuss the dangerous implications of the Spa's urged interpretation of the Free Exercise Clause.

The State's enforcement of the WLAD against the Spa did not violate the Spa's free exercise rights because the WLAD is a neutral and generally applicable statute that is rationally related to a legitimate—indeed compelling—government purpose of eradicating barriers to equal treatment in the marketplace. The Spa's expansive interpretation of the Free Exercise Clause is not only incorrect, but would yield untenable results. The Spa's religious justifications for resisting equality claims are certainly not new: Religious justifications were advanced in response to other civil rights protections and have been rejected by courts in the modern era. *Amici* respectfully requests that this Court do the same and affirm the district court's judgment.

## ARGUMENT

### I. The State's Enforcement of the WLAD Did Not Violate the Spa's Free Exercise Rights.

The Free Exercise Clause of the First Amendment guarantees the right to

3

believe and profess whatever religious doctrine one desires and forbids "governmental regulation of religious *beliefs* as such." *Emp. Div. Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990) (internal citations omitted). Therefore, the government cannot "compel affirmation of religious belief, punish the expression of religious doctrines . . . [or] impose special disabilities on the basis of religious views or religious status . . . ." *Id.* (internal citation omitted).

"[N]ot all burdens on religion are unconstitutional," however. *United States v. Lee*, 455 U.S. 252, 257 (1982)*; see also Roman Cath. Diocese of Albany v. Vullo,* No. 45, 2024 WL 2278222, at *4 (N.Y. May 21, 2024) (explaining *Smith* holds that "devoutly religious beliefs must give way to generally applicable laws"). The Free Exercise Clause does not preclude enforcement of otherwise valid statutes of general application, even when they incidentally burden religious conduct. To hold otherwise would be to "make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto [themself]." *Id.* at *5 (citation omitted)*.

To determine the level of scrutiny applied to a law alleged to burden religious exercise, courts first look to whether the law is neutral and generally applicable. If it is, the law is subject to rational basis review, even if it incidentally burdens religious exercise. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1871 (2021) (citing *Smith*, 494 U.S. at 878-882, 885 (holding a law containing a criminal prohibition of the use

4

of peyote in religious ceremonies was generally applicable and that the "government's ability to enforce generally applicable prohibitions . . . 'cannot depend on measuring the effects of governmental action on a religious objector's spiritual development'" (internal citations omitted))).

The Washington Supreme Court has already concluded that "[t]he WLAD is a neutral, generally applicable law subject to rational basis review" that regulates discrimination in public venues to ensure that Washingtonians are free from discriminatory practices in public spaces. *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 523 (2019). This Court should find the same.

A. The WLAD is Neutral

To determine whether a law is neutral, courts look to the plain meaning of the text and the state's actions to determine whether the law targets religious activity or whether there is "governmental hostility which is masked…[or] overt." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). A law is not neutral if "the object of [the] law is to infringe upon or restrict practices *because* of their religious motivation. . . ." *Id.* at 533 (emphasis added).[2] For instance, courts

---

[2] The analysis as to whether a law is neutral and generally applicable is interrelated. *Lukumi Babalu Aye*, 508 U.S. at 531 (internal citations omitted). If a law lacks neutrality, it is also unlikely to be generally applicable, and vice versa. *Id.* While courts have found laws to permissibly burden the right to free exercise on just one aspect of this two-part analysis, the WLAD is both neutral and generally applicable.

have found neutrality lacking when a law barred clergy members from holding public office solely because they are religious leaders, constituting discrimination on the basis of religious status. *See McDaniel v. Paty*, 435 U.S. 618, 629 (1978). Similarly, laws are deemed non-neutral if they "prohibit religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877 (citing *Lukumi*, 508 U.S. at 542-46).

The WLAD is neutral. Enacted in 1949, the WLAD originally regulated only employment discrimination until the legislature in 1957 expanded the law to prohibit discrimination in places of public resort, accommodation, or amusement. *Marquis v. City of Spokane*, 130 Wash. 2d 97, 105 (1996). Over the next approximately fifty years, the legislature continued to expand the WLAD to include sex, marital status, age, and disability as unlawful bases for discrimination. *Id*. at 106; *Woods v. Seattle's Union Gospel Mission*, 197 Wash. 2d 231, 269 (2021). The purpose of the WLAD is to prevent discrimination and offer individuals a process to seek recourse for discriminatory treatment. Wash. Rev. Code Ann. § 49.60.010 (West 2020) details: "The legislature hereby finds and declares that the practices of discrimination against any of its inhabitants because of", among other enumerated characteristics, sex and sexual orientation, "are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." This purpose is unrelated to

targeting religious activity or belief. Unlike the statute in *Lukumi*, the WLAD's text does not include specific references to religious activities while exempting secular conduct. *See, e.g., Lukumi*, 508 U.S. at 532-42 (holding that the law at issue was not neutral because the legislative history showed clear intent to target practitioners of the Santeria faith).

The Spa asserts that the WLAD is not neutral because the Spa must "choose between its business and its faith," but the Spa misunderstands the test for neutrality. Appellants' Br. 28. The Spa can point to nothing in the WLAD or its implementation that targets religion or displays hostility to religious beliefs. The WLAD "tolerate[s] and respect[s] religious beliefs in a myriad of ways," and the Spa is unable to cite to any evidence suggesting otherwise. *McMahon v. World Vision, Inc.,* No. C21-0920JLR, 2023 WL 8237111, at *15 (W.D. Wash. Nov. 28, 2023), *appeal docketed,* No. 24-3259 (9th Cir. May 22, 2024).

## B. The WLAD is Generally Applicable

General applicability requires that the state treat secular and religious activities equally. A law is not generally applicable if it (1) includes a formal mechanism for granting individualized, discretionary exemptions; or (2) prohibits religious conduct while permitting comparable secular conduct. *Fulton,* 141 S. Ct. at 1877-79 (citing *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1730-1732 (citations omitted)).

7

*Fulton* permits the law to contain exemptions, as long as the exemptions are not individualized and discretionary. *Fulton*, 141 S. Ct. at 1877 (citing *Smith*, 494 U.S. at 884). *Tingley v. Ferguson* provides a recent illustration of how the *Fulton* analysis should be applied to the WLAD. In *Tingley*, this Court upheld a Washington State law (S.B. 5722, 65th Leg., Wash. 2018) prohibiting state-licensed health care providers from practicing "conversion therapy" on youth. 47 F.4th 1055, 1064, 1089 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 33 (2023). A licensed therapist sued the state arguing (among other claims) that the law violated his free exercise rights under the First Amendment because it contained an express exemption for counseling provided by individuals affiliated with religious organizations. This Court held that, despite the exemption for counselors acting under the auspices of a religious organization or denomination, Senate Bill 5722 was generally applicable. The Court found that the law did not contain a "formal mechanism for granting exceptions" for that "invite[s] the government to consider the particular reasons for a person's conduct," *Fulton*, 141 S. Ct. at 1877, and the exceptions at issue were not the type of discretionary exemptions contemplated in *Fulton*. *Id.* at 1878. "There is no provision in [SB 5722] for individual exceptions that would allow secular exemptions but not religious ones." *Tingley,* 47 F.4th 1055 at 1087.[3]

---

[3]Other federal courts have applied the same analysis of distinguishing laws that allow for discretionary, individualized exemptions from laws that contain objective,

8

The WLAD exempts houses of worship, Wash. Rev. Code Ann. § 49.60.040(11), but it does not contain individualized, discretionary exemptions like those in *Fulton*. Like the exemptions in *Tingley*, the exemptions outlined in the WLAD are categorical. "Their application does not depend on individualized discretion; they contain no mechanism to import such discretion," and, most importantly, the exemptions "do not invite 'the government to decide which reasons for not complying with the [law] are worthy of solicitude'." *McMahon,* 2023 WL 8237111, at *16 (citing *Fulton*, 141 S. Ct. at 1879).

The Supreme Court of Washington has already concluded that the WLAD's public accommodations provisions are neutral and generally applicable. *State v. Arlene's Flowers, Inc.,* 193 Wash. 2d 469, 519 (2019). In that case, a flower shop refused to provide flowers to a same-sex couple for their wedding, asserting a free-exercise right under the U.S. Constitution. *Id.* at 519-520. In support, the florist cited

---

categorial exemptions. *See, e.g., Brox v. Hole*, 83 F.4th 87 (1st Cir. 2023) (holding a vaccine requirement for public ferry employees generally applicable despite containing medical exemptions but no religious exemptions); *Kane v. De Blasio*, 19 F.4th 152, 158 (2nd Cir. 2021) (holding a vaccine requirement for Department of Education employees was generally applicable despite categorical exemptions); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 285-89 (2nd Cir. 2021) (holding a vaccine requirement for employees at healthcare facilities was generally applicable despite categorical medical and religious exemptions); *Does 1-6 v. Mills*, 16 F.4th 20, 30 (1st Cir. 2021) (holding a vaccine requirement was generally applicable despite categorical exemptions); *see also Phillips v. City of New York*, 775 F.3d 538, 543 (2nd Cir. 2015); *King v. Governor of N.J.*, 767 F.3d 216, 242-43 (3rd Cir. 2014); *Ungar v. N.Y.C Hous. Auth.*, 363 F. App'x. 53, 56 (2nd Cir. 2010).

9

to certain categorical exemptions, including a categorical exemption for religious institutions, outlined in the WLAD. *Id.* The court held that blanket, non-discretionary exemptions for religious organizations in laws like the WLAD do not indicate an intent to target religion; rather, these types of exemptions indicate a desire to respect religious exercise. *Id.* (citing *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 335-38 (1987); *Elane Photography, L.L.C. v. Willock*, 309 P.3d 53, 74-75 (N.M. 2013) ("Exemptions for religious organizations are common in a wide variety of laws, and they reflect the attempts of the Legislature to respect free exercise rights by reducing legal burdens on religion.")). Therefore, consistent with both federal and Washington-state jurisprudence, the WLAD's categorical exemptions indicate that a law is generally applicable and subject to a rational basis review. *Arlene's Flowers*, 193 Wash. 2d at 522-32.

The Spa seeks an exception to allow them to discriminate on the basis of a characteristic protected under the WLAD (gender identity), based on a religious objection. But, the WLAD does not include any discretionary exceptions, and this Court should find – as the Supreme Court of Washington did in *Arlene's Flowers* – that the WLAD is generally applicable.

C. The WLAD is Rationally Related to a Legitimate Government Purpose

The WLAD satisfies rational basis review, as multiple courts have previously

10

determined. *See, e.g.*, *Arlene's Flowers*, 193 Wash. 2d at 523; *McMahon*, 2023 WL 8237111, at *16. The WLAD advances the government's legitimate interest in ending discrimination in Washington, *McMahon*, 2023 WL 8237111, at *16 (citing *Arlene's Flowers*, 193 Wash. 2d), and ensuring equal access to public accommodations, *Arlene's Flowers,* 193 Wash. 2d at 523 (citing *Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 277 (3d Cir. 2007)).

Recognizing that transgender individuals experience discrimination in significant ways, the Washington Legislature enacted a statute in 2006 to expand the protections of the WLAD to include protections from discrimination based on "heterosexuality, homosexuality, bisexuality, and gender expression or identity." *See* Wash. Rev. Code Ann. § 49.60.040(26)–(27). The State of Washington has been explicit in its case law and legislative action that the WLAD is meant to protect all individuals in Washington so that they can work and access public spaces equitably.

As the Washington Supreme Court explained in *Arlene's Flowers,* the rights protected by the WLAD are "no more about access to flowers than civil rights cases in the 1960s were about access to sandwiches." 193 Wash. 2d at 531 (citation omitted). The WLAD guarantees access to goods or services and also "serve[s] a broader societal purpose: eradicating barriers to the equal treatment of all citizens in the commercial marketplace." *Id.*

D. <u>The WLAD, As Applied to the Spa, Is Subject to Rational Basis Review</u>

11

The Spa argues that the WLAD is subject to strict scrutiny because the Human Rights Commission investigator displayed hostility when choosing "to elevate the rights of public access of a transgender woman over the expressed constitutional rights of these Korean Christians." Appellants' Br. 28.  To support this assertion, the Spa cites to *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,* 138 S. Ct. 1719 (2018), but this case is easily distinguishable. In *Masterpiece,* the Supreme Court set aside a judgment of the Colorado Civil Rights Commission requiring a bakery not to discriminate on the basis of LGBTQ status in its sale of wedding cakes. *Masterpiece*, 138 S. Ct. at 1732. The Court cited remarks by a commissioner that disparaged religion as evidence of religious hostility.[4] The Court found that the comments "cast doubt on the fairness and impartiality of the Commission's adjudication" of the case and held that the Commission violated the plaintiff's right to a "neutral and respectful consideration of his claims" as required by the First Amendment. *Id*. at 1721.

There is nothing in the record to indicate that the Washington Human Rights Commission's implementation of the WLAD or the investigator's actions were motivated by "clear and impermissible hostility toward the sincere religious beliefs

---

[4] In particular, the Court cited a commissioner's statement describing the plaintiff's "faith as 'one of the most despicable pieces of rhetoric that a person can use'" and another statement comparing the plaintiff's "invocation of his sincerely held religious beliefs to defenses of slavery and the Holocaust" as evidence of religious hostility. *Masterpiece*, 138 S. Ct. at 1729.

that motivated [their] objection" or that the WLAD's application was motivated by animosity or hostility. *Olympus Spa v. Armstrong,* 675 F. Supp. 3d 1168, 1194 (W.D. Wash. 2023) (quoting *Masterpiece Cakeshop, Ltd.*, 138 S. Ct. at 1729). Under the Spa's reading, *every* attempt to receive a religious exemption would be subject to strict scrutiny. But *Smith* makes clear that if the law is neutral and generally applicable, it is only subject to rational basis review in all instances.

## II. The Ministerial Exception Does Not Apply.

In a last-ditch attempt to support their argument that the Spa should be granted an exception to the WLAD, the Spa further argues that its discrimination is protected by the First Amendment's ministerial exception. Appellants' Br. 38-39. The ministerial exemption relates to the relationship between a religious entity and its employees who perform ministerial functions. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 697 (2012). The Spa is not a religious entity; the Spa is a public business that is "designed specifically for women and our mission is to restore and rejuvenate women's physical health as well as spiritual health." *Olympus Spa*, 675 F. Supp. at 1180 (quotation omitted). Nor is the relationship between the Spa and its customers, members of the general public, anything like the hiring or firing of ministerial employees.

In *Hosanna-Tabor*, the U.S. Supreme Court held that the First Amendment supports a "ministerial exception" to employment discrimination laws, allowing

13

religious institutions the authority to hire and fire some key employees (notably, not all employees). *Hosanna-Tabor*, 132 S. Ct. at 697. That is because forcing a church to "accept or retain an unwanted minister, or punish[] a church for failing to do so" would "intrude[] upon more than a mere employment decision." *Id*. at 706.

The ministerial exception is simply not applicable here. The ministerial exception governs one type of relationship: the relationship between a religious entity and its spiritual leaders. No case law or reason exists to suggest that the exception permits discrimination against customers who have no similar relationship to the organization.

## III.  Accepting the Spa's Expansive Interpretation of the Free Exercise Clause Would Yield Untenable Results and Threaten the Legislature's Power to Protect Washingtonians.

In addition to being wholly unsupported by precedent or doctrinal justification, the Spa's argument would yield untenable results that could subject transgender individuals, who are explicitly included in the WLAD-protected class, to more discrimination.[5]

Adopting the Spa's interpretations of the Free Exercise Clause would allow any business to discriminate against a customer based on the business owner's religious

---

[5] Transgender individuals are subjected to "some of the most virulent discrimination of any group for whom data are collected." Tobias Barrington Wolff, *Civil Rights Reform and the Body*, 6 Harv. L. & Pol'y Rev. 201, 203-204 (2012).

beliefs. Businesses, citing their religious beliefs, could refuse service to widows or divorced individuals; people with afros, braids, locks, or twists; or individuals with disabilities who require the aid of service animals. *See* Wash. Rev. Code Ann. § 49.60.040(17), (21), (25).

If this Court were to allow an exception for the Spa to discriminate against transgender women, it would stand in stark contrast to the purpose of the WLAD and allow for places of public accommodations to make assessments about individuals based on their own beliefs about the person's appearance, behavior, and image. *Arlene's Flowers*, 193 Wash. 2d at 522-23*; see also* Wash. Rev. Code Ann. § 49.60.040(27) (defining "gender expression or identity" as "having or being perceived as having a gender identity . . . whether or not that gender identity, self-image, appearance, behavior, or expression is different from that traditionally associated with the sex assigned to that person at birth").

Additionally, the WLAD has been repeatedly upheld as a "regulatory law enacted under the legislature's police power to promote the health, peace, safety, and general welfare of the people of Washington," so to grant the exception the Spa seeks would also threaten the legislature's power to create laws to protect Washingtonians from discrimination. *See Woods v. Seattle's Union Gospel Mission*, 197 Wash. 2d 231, 238 (2021) (quoting *Ockletree v. Franciscan Health Sys.*, 179 Wash. 2d 769, 773 n.2, (2014)).

15

## IV.    Religious Justifications Used to Oppose Equality Claims Have Been Rejected by Courts in the Modern Era.

While this specific dispute about the application of laws that protect transgender patrons from discrimination may seem novel, the question of whether religious objections justify exemptions to laws barring discrimination is not a new one. For decades, courts have refused businesses' attempts to avoid compliance with civil rights laws. Instead, courts have recognized that the state has an interest in protecting people from discrimination. As long as that protection does not violate the First Amendment, which, as explained above, it does not, then the court will enforce compliance with anti-discrimination measures.

Though religiously motivated actors have often been important voices for equality, religious beliefs have also been offered to resist efforts to ensure equal treatment of historically disadvantaged groups. Although the historical context for the struggles for equality based on race, gender, and disability are unique, the common thread is that modern courts have consistently considered—and rejected—arguments that religious beliefs should override discrimination protections. The same should be true today.

In the years following the Supreme Court's enforcement of *Brown v. Board of Education*, 347 U.S. 483 (1954), the Treasury Department declared that racially segregated schools would not be eligible for tax-exempt status. Attempts by the IRS to enforce the Treasury Department's rule met resistance. Most notably, Bob Jones

16

University brought suit after the IRS revoked the University's tax-exempt status based on its policies of refusing to admit African American students and students engaged in or advocating interracial relationships. *Bob Jones Univ. v. United States*, 461 U.S. 574 (1983). The sponsors of Bob Jones University "genuinely believe[d] that the Bible forbids interracial dating and marriage." *Id*. at 580. Bob Jones's lesser-known co-plaintiff, Goldsboro Christian Schools, operated a K-12 school that refused to admit African American students. According to Goldsboro Christian Schools' interpretation of the Bible, "[c]ultural or biological mixing of the races [was] regarded as a violation of God's command." *Id*. at 583 n.6 (citation omitted). Both schools argued that the rule could not constitutionally apply to schools engaged in racial discrimination based on sincerely held religious beliefs.

Significantly, the Supreme Court rejected the schools' claims, holding that the government's interest in eradicating racial discrimination in education outweighed any burdens on religious beliefs. *Id*. at 602–04 (applying the pre-*Smith* test). The Court did not question the sincerity of the institutions' religious commitments, or the burden imposed by denying them tax benefits, but squarely held that religious objections did not permit the schools to inflict discriminatory harms on third parties. *Id*. at 604.

Schools also raised religious liberty defenses to the enforcement of gender equality measures. Religious schools resisted the principle that women and men

17

must receive equal compensation by proclaiming that the "Bible clearly teaches that the husband is the head of the house, head of the wife, head of the family." *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1392 (4th Cir. 1990). The courts rejected this claim, finding a state interest of the "highest order" in remedying the outmoded belief that men should be paid more than women because of their role in society. *Id.* at 1398 (citation and quotations omitted) (applying the pre-*Smith* test); *see also EEOC v. Fremont Christian Sch.*, 781 F.2d 1362 (9th Cir. 1986) (same); *EEOC v. Tree of Life Christian Schs.*, 751 F. Supp. 700 (S.D. Ohio 1990) (same).

Religious resistance to equality was not limited to schools. Although the anti-miscegenation laws eventually fell, the path to that rightful conclusion was not a smooth one. The trial court in *Loving v. Virginia*, 388 U.S. 1 (1967), reasoned that "'Almighty God created the races white, black, yellow, malay and red, and he placed them on separate continents . . . . The fact that he separated the races shows that he did not intend for the races to mix.'" *Id*. at 3 (quoting trial court). But the Supreme Court expressly rejected the trial court's reasoning and declared Virginia's anti-miscegenation law unconstitutional. *Id*. at 2.

Courts also rejected similar efforts to undermine the Civil Rights Act of 1964 through demands for religious exemptions. In 1964, a barbeque chain was sued under the public accommodations' protections of the Civil Rights Act of 1964 for refusing to serve Black people inside the restaurant. *Newman v. Piggie Park Enters.,*

18

*Inc.*, 256 F. Supp. 941, 943 (D.S.C. 1966), *aff'd in relevant part and rev'd in part on other grounds*, 377 F.2d 433 (4th Cir. 1967), *aff'd and modified on other grounds*, 390 U.S. 400 (1968). The owner argued that serving Black people violated his religious beliefs. *Id.* at 944. The court rejected the restaurant owner's defense, holding that the owner "has a constitutional right to espouse the religious beliefs of his own choosing, however, he does not have the absolute right to exercise and practice such beliefs in utter disregard of the clear constitutional rights of other citizens." *Id.* at 945.

Today, laws and policies designed to protect against gender discrimination continue to face challenges in the name of religious belief, and courts have generally rejected such arguments, just as they rejected them in the race context. *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012) *overruled on other grounds* (reversing summary judgment for religious school that claimed a religious right, based on its opposition to premarital sex, to fire a teacher for becoming pregnant outside of marriage, holding that the school seemed "more concerned about her pregnancy and her request to take maternity leave than about her admission that she had premarital sex"); *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) (holding that a religious school could not rely on its religious opposition to premarital sex as a pretext for pregnancy discrimination, noting that "it remains fundamental that religious motives may not be a mask for sex

19

discrimination in the workplace"); *Vigars v. Valley Christian Ctr.*, 805 F. Supp. 802, 808–10 (N.D. Cal. 1992) (same).

A number of state courts also have rejected free exercise challenges to laws prohibiting discrimination against women. In *McClure v. Sports & Health Club*, *Inc.,* for example, owners of a sports club routinely hired and fired female employees based on a biblical interpretation that disapproved of single women working without their fathers' permission and married women working without their husbands' permission. 370 N.W.2d 844, 847 (Minn. 1985). Although the club's owners asserted that their practices were lawful exercises of their First Amendment rights to free speech, freedom of association, and free exercise, the Minnesota Supreme Court concluded that the club's employment policies regarding women violated the employment discrimination and public accommodations sections of Minnesota's antidiscrimination statute. *See id.* at 854. In enforcing the antidiscrimination protections, the Minnesota Supreme Court acknowledged that the business owners had "deeply held and sincere religious beliefs." *Id.* at 852. Nevertheless, the court determined that the business owners' beliefs could not exempt them from the state antidiscrimination law. *See id.* at 853. "[T]he government," the court reasoned, "has a responsibility to afford its citizens equal access to all accommodations open to the general public." *Id.* Other state courts have reached the same conclusion. *See, e.g.*, *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 280 (Alaska 1994)

(state antidiscrimination statute applied to landlord who refused to rent to an unmarried woman cohabitating with a man over the landlord's free exercise objection to premarital cohabitation).

Courts have similarly denied religious defenses for disability discrimination. In *Tassinari v. Salvation Army Nat'l Corp*., for example, a class of individuals with opioid use disorder (OUD) filed suit challenging the Salvation Army's policy prohibiting access to medication for OUD in its rehabilitation centers, alleging violations of the Rehabilitation Act and Fair Housing Act. 610 F. Supp. 3d 343, 349 (D. Mass. 2022). In its motion to dismiss, the Salvation Army asserted a free exercise defense, arguing that its policy prohibiting certain drugs and prescription medications for members reflected its long-standing religious belief against the use of drugs. The court rejected the Salvation Army's defense, stating that there was no "disputed religious issue" in the case: The court need not adjudicate religious views or apply church doctrine to determine whether the Rehabilitation Act or the Fair Housing Act was violated. *Id*. at 350.

Religious freedom does not authorize businesses to implement discriminatory policies "in utter disregard of the clear constitutional rights of other citizens," *Piggie Park*, 256 F. Supp. at 945, and arguments that religious freedom requires an exemption from public accommodation laws should be rejected today, just as they have been in the past.

21

## <u>**CONCLUSION**</u>

For these reasons, this Court should affirm the order dismissing the Spa's

Free Exercise claim.

Date: June 4, 2024

Respectfully submitted,

*/s/ Susannah Porter Lake*

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
Susannah Porter Lake
Adrien Leavitt
PO Box 2728
Seattle, WA 98111
P: (206) 624-2184
slake@aclu-wa.org
aleavitt@aclu-wa.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Aditi Fruitwala
915 15th Street NW
Washington D.C. 20015
P: (332) 204-2768
afruitwala@aclu.org

AMERICANS UNITED FOR SEPARATION OF
CHURCH AND STATE
Bradley Girard
Jenny Samuels

22

1310 L Street NW, Suite 200
Washington, D.C. 20005
(202) 466-3234
girard@au.org
samuels@au.org

## CORPORATE DISCLOSURE STATEMENT

*Amici* curiae American Civil Liberties Union of Washington (ACLU), American Civil Liberties Union of Washington (ACLU of WA), and Americans United for Separation of Church and State are nonprofit entities that do not have parent corporations, and no publicly held corporation owns 10 percent or more of any stake or stock in *Amici*. *See* Fed. R. App. P. 26.1.

Dated: June 4, 2024

By: /s/ *Susannah Porter Lake*
Susannah Porter Lake
American Civil Liberties Union of
Washington Foundation

*Counsel for Amici American Civil Liberties Union, American Civil Liberties Union of Washington, and Americans United for Separation of Church and State*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that:

1. This brief complies with the type-volume limitation, as provided in Circuit
   Rule 32.2 and Fed. R. App. P. 29(a)(5), because, exclusive of the exempted
   portions of the brief as provided by Fed. R. App. P. 32(f), the brief contains
   5,110 words.

2. This brief complies with the type-face and type-style requirements, as
   provided in Fed. R. App. P. 32(a) and Circuit Rule 32 because the brief has
   been prepared in proportionally spaced typeface using Microsoft Word for
   Office 365 in 14-point Times New Roman font.

3. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon
   the word count feature of this word processing system in preparing this
   certificate.


Dated: June 4, 2024

By: <u>*/s/ Susannah Porter Lake*</u>
Susannah Porter Lake
American Civil Liberties Union of
Washington Foundation

*Counsel for Amici American
Civil Liberties Union,
American Civil Liberties
Union of Washington, and
Americans United for
Separation of Church and
State*

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 4, 2024. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 4, 2024

By: */s/ Susannah Porter Lake*
Susannah Porter Lake
American Civil Liberties Union of
Washington Foundation

*Counsel for Amici American*
*Civil Liberties Union,*
*American Civil Liberties*
*Union of Washington, and*
*Americans United for*
*Separation of Church and*
*State*

26