No. 23-4031

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

OLYMPUS SPA, JANE DOE EMPLOYEE, JANE DOE PATRON 1,

Plaintiffs-Appellants,

v.

ANDRETA ARMSTRONG, in her official capacity as Executive Director of the Washington State Human Rights Commission, MADISON IMIOLA, in her official and individual capacities as Civil Rights Investigator for the Washington State Human Rights Commission,

Defendants-Appellees.

---

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
No. 2:22-cv-00340-BJR
The Honorable Barbara J. Rothstein
United States District Judge

---

## APPELLEES' RESPONSE TO COMBINED PETITIONS FOR REHEARING AND REHEARING EN BANC

---

NICHOLAS W. BROWN
Attorney General

NEAL LUNA, WSBA No. 34085
Assistant Attorney General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-287-4189
neal.luna@atg.wa.gov

## TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................1

II.   RESPONSE TO PETITION FOR REHEARING ............................2

III.  RESPONSE TO PETITION FOR REHEARING EN BANC ...........4

    A.  The Majority Correctly Concluded that the WLAD's Public
        Accommodations Provision Is Neutral and Generally
        Applicable..................................................................................6

    B.  The Majority Did Not Err by Considering the Spa's
        Commercial Nature as One Fact Among Many Within Its First
        Amendment Analysis .................................................................9

    C.  The Majority Correctly Held that the Spa's Free Speech Claim
        Fails Because the Spa's Entrance Policy Furthers Unlawful
        Discriminatory Conduct, Not Protected Speech ........................14

IV.  CONCLUSION................................................................................16

# TABLE OF AUTHORITIES

### Cases

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) .................................................................. 10

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
  481 U.S. 537 (1987) ................................................................... 8

*Boy Scouts of Am. v. Dale,*
  530 U.S. 640 (2000) .............................................................. 3, 13

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ................................................................ 6, 9

*City of Dallas v. Stanglin,*
  490 U.S. 19 (1989) ................................................................. 2, 12

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC,*
  666 F.3d 1216 (9th Cir. 2012) ...................................................... 12

*Fellowship of Christian Athletes v. San Jose United Sch. Dist. Bd. of
    Educ.,*
  82 F.4th 664 (9th Cir. 2023) ........................................................ 6

*Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of
    Fraternal Order of Eagles,*
  59 P.3d 655 (Wash. 2002) ........................................................... 7

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) ................................................................ 6, 9

*Green v. Miss U.S. of Am., LLC,*
  52 F.4th 773 (9th Cir. 2022) .................................................... 14, 15

*Heart of Atlanta Motel, Inc. v. United States,*
  379 U.S. 241 (1964) ................................................................. 8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
 515 U.S. 557 (1995) ............................................................................... 10, 14

*NAACP v. State of Alabama ex rel. Patterson*,
 357 U.S. 449 (1958) ...................................................................................... 4

*New York State Club Ass'n, Inc. v. City of New York*,
 487 U.S. 1 (1988) ........................................................................................... 8

*Roberts v. U.S. Jaycees*,
 468 U.S. 609 (1984) ............................................................................. passim

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*),
 547 U.S. 47 (2006) ............................................................................ 11, 15, 16

*Tandon v. Newsom*,
 593 U.S. 61 (2021) ..................................................................................... 6, 7

*Tingley v. Ferguson*,
 47 F.4th 1055 (9th Cir. 2022) ..................................................................... 6, 8

*Youth 71Five Ministries v. Williams*,
 No. 24-4101, 2024 WL 3749842 (9th Cir. Aug. 8, 2024) .............................. 6

## Statutes

Wash. Rev. Code § 49.60.040(2) ........................................................................ 6

## Rules

Fed. R. App. P. 40(b)(2) ..................................................................................... 4

Fed. R. App. P. 40(c) .......................................................................................... 4

## I. INTRODUCTION

The panel properly rejected Plaintiffs-Appellants' (the Spa) request for a judicial license to discriminate based on gender identity. In asking the Court to revive its effort to exclude transgender customers from its business, the Spa leans heavily on the Korean cultural traditions that guide the services it offers and accuses the Court of erring with respect to the Spa's free association claim. But the Spa's petition for rehearing should be denied because the majority correctly held that people do not gather at the Spa to engage in expressive activity protected by the First Amendment. The majority recognized that customers go to the Spa to receive the Spa's services and experience that aspect of Korean culture, not to share or advocate for ideals or beliefs—whether cultural, political, social, educational, moral, or religious. The majority was correct, and panel rehearing is unwarranted.

The Spa's petition for rehearing en banc also should be denied. The majority faithfully applied Ninth Circuit and Supreme Court precedent in holding that the Washington Law Against Discrimination's (WLAD) public accommodations provision is generally applicable and that the First Amendment does not protect the Spa's entry policy because it is not protected speech, but rather discriminatory conduct carried out through words. Even the dissent did

1

not question any aspect of the majority's First Amendment analysis. *See* Op. at 13. In arguing otherwise, the Spa simply repeats the same First Amendment arguments the panel correctly rejected under well-established law. There is no reason to rehear the Spa's arguments at all, much less en banc.

## II.    RESPONSE TO PETITION FOR REHEARING

The Spa's petition for rehearing focuses on a single part of its free association claim, arguing that providing or receiving the Spa's services is a constitutionally protected expressive activity because women come to the Spa "to share and experience the physical and spiritual healing and renewal that traditional Korean culture provides through [the Spa's services] provided by female employees." Pet. at 4. But rehearing is unwarranted because the panel majority considered—and rightly rejected—the very argument the Spa makes here, holding that "the act of giving or receiving a Korean massage hardly contains even a 'kernel of expression,' let alone a quantity 'sufficient to bring the activity within the protection of the First Amendment.'" Op. at 27 (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)).

The majority correctly recognized that the First Amendment's right to expressive association does not extend to a business merely because it sells a cultural experience to its customers, as the Spa argues. Op. at 27; Pet. at 3-5.

2

Indeed, as the Court held, "[t]he Spa's effort to transform the act of visiting a spa into the sharing of 'ideals and beliefs' within an expressive association would stretch the freedom of association beyond all existing bounds." *Id.* The Spa's limitless view would create a First Amendment sanctuary for "virtually every commercial gym or massage establishment into an expressive association" to exclude someone based on their gender identity, race, sex, or any other protected class status. *Id.*

Protection under the First Amendment for expressive association requires more: the Spa and its customers must engage together in expressive activity. Op. at 26; *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). For example, as the panel correctly recognized, the Boy Scouts is an expressive association that the First Amendment protects because it "'seeks to transmit . . . a system of values,' offered [through] consistent instruction and engagement with a stable membership, in 'activities . . . designed to 'inculcate [youth members] with the Boy Scouts' values.'" Op. at 27-28 (quoting *Dale*, 530 U.S. at 649-50). The Spa's services, in contrast, "are not similarly designed to 'transmit . . . a system of values.'" *Id.* The Spa's services may originate from Korean tradition, but the Spa presented no evidence that its employees instruct customers on the Spa's "system of values" or Korean culture, either through the Spa's services or

3

otherwise. Customers go to the Spa to receive Spa services, like body scrubs, not to be engrained in the Korean culture or to discuss ideas or exchange beliefs about that culture.

The majority correctly applied the foundational free association precedents in holding that the Washington State Human Rights Commission (HRC) did not infringe on the Spa's free expressive association rights, and the Spa is wrong that *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), and *National Association for Advancement of Colored People v. State of Alabama ex rel. Patterson*, 357 U.S. 449 (1958), contradict that conclusion. The Spa's petition for rehearing should be denied because the majority properly held that the facts do not establish the Spa as a place of expressive association. *See* Op. at 26.

## III.    RESPONSE TO PETITION FOR REHEARING EN BANC

Nor is rehearing en banc warranted. En banc review "is not favored and ordinarily will be allowed only if one of the criteria in Rule 40(b)(2)(A)-(D) is met." Fed. R. App. P. 40(c). The Spa wrongly argues that rehearing en banc is needed because the panel's decision conflicts with Ninth Circuit and Supreme Court precedent. Pet. at 5-15; *see* Fed. R. App. P. 40(b)(2)(A), (B). The panel carefully applied Ninth Circuit and Supreme Court

4

case law to reject the free exercise of religion and free speech arguments that the Spa advances in its petition. And the panel never held that "commercial conduct devalues First Amendment freedoms," as the Spa asserts. Pet. at 7.

The Spa first argues that the WLAD is not generally applicable because its exemption for private clubs favors secular activities over the Spa's religious activities, but the majority concluded that "the Spa is not a religious institution." Pet. at 6, 8-10; Op. at 23-24. In any case, the Spa is not a private club, and, even if it were, nothing prevents a private club from being religious in nature. Second, nowhere does the majority hold that the Spa's commercial nature strips it of First Amendment freedoms. The majority simply acknowledged the Spa's services as commercial enterprise and held the Spa to the same free speech standards that apply to everyone, as set forth in Ninth Circuit and Supreme Court precedent. Finally, the majority held that the HRC, in enforcing the WLAD, does not infringe on the Spa's speech by prohibiting the Spa from posting the transgender equivalent of a "White Applicants Only" policy on its website. Op. at 15-16, 19.

These holdings rely on settled law applied to the straightforward facts of this case. The Spa fails to meet any of Rule 40(b)(2)'s criteria, and the Spa's petition for rehearing en banc should be denied.

**A.** **The Majority Correctly Concluded that the WLAD's Public Accommodations Provision Is Neutral and Generally Applicable**

The Spa does not challenge the majority's holding that the WLAD's public accommodations law, Wash. Rev. Code § 49.60.040(2), is neutral. Op. at 20-21 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1085-87 (9th Cir. 2022); *Fulton v. City of Philadelphia*, 593 U.S. 522, 534-35 (2021); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993)). The Spa asserts only that the WLAD is not generally applicable if it favors secular activity over religious activity, which the Spa incorrectly argues that the WLAD does through its private club exemption. Pet. at 8. Therefore, the Spa claims, the majority misapplied *Tandon v. Newsom*, 593 U.S. 61, 62 (2021); *Fulton*, 593 U.S. at 522; *Fellowship of Christian Athletes v. San Jose United School District Board of Education*, 82 F.4th 664 (9th Cir. 2023) (en banc); and *Youth 71Five Ministries v. Williams*, No. 24-4101, 2024 WL 3749842 (9th Cir. Aug. 8, 2024) (order granting injunction pending appeal). Pet. at 8-10. But the majority held that the WLAD's public accommodations provision is generally applicable because "its nondiscrimination provisions apply to religious and secular conduct alike." Op. at 21 (citing *Tingley*, 47 F.4th at 1088 (which in turn cites *Fulton*, 593 U.S. at 537)). It is the Spa, not the majority, that is confused.

6

The Spa is not a religious entity, Op. at 23-24, but even if it were, the Spa is not a private club because it is a business open to the public. While the WLAD does not define "private club," Washington courts use the same test to determine whether an entity is a private club that federal courts use to determine whether a relationship is an intimate association. *Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 59 P.3d 655, 669 (Wash. 2002). The Spa does not otherwise dispute the majority's holding that the Spa is not an intimate association. *See* Op. at 25 ("The Spa's customers and employees do not share 'deep attachments and commitments,' and "the Spa exhibits no selectivity, let alone a 'high degree of selectivity,' in admission") (quoting *Jaycees*, 468 U.S. at 620).

The Spa tries to make an apples to oranges comparison in arguing that private clubs are comparable to secular entities to whom the panel should have compared the Spa against under its free exercise analysis. *See* Pet. at 10. But places of public accommodation, like the Spa, are not comparable to private clubs for purposes of First Amendment protection. In this context, comparability is "judged against the asserted government interest" justifying the WLAD provision at issue. *Tandon*, 593 U.S. at 62. With the WLAD's exemption for private clubs, the government interest is in balancing free association rights with

7

the government's interest in prohibiting discrimination against protected classes. *See N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 12 (1988) (discussing when a private club is sufficiently small, selective, and exclusive to be entitled to free association protection under the First Amendment versus when it must comply with a state's antidiscrimination law) (citing *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 547 (1987)); *Jaycees*, 468 U.S. at 621). But for places of public accommodation, the interest is ensuring equal access to, and equal dignity in, the common marketplace. *Jaycees*, 468 U.S. at 624; *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964). These are different interests. For businesses open to the public, the WLAD prohibits gender identity discrimination whether the business has religious or secular ownership. Op. at 21. Since the Spa has chosen to operate as a business open to the public, not a private club with exclusive or vetted membership, Pet. at 1, it must comply with the WLAD's prohibition on gender identity discrimination.

The panel majority correctly applied precedent to conclude the WLAD's public accommodations provision is neutral and generally applicable. As the opinion rightly explains, "Nothing in the statute 'prohibits religious conduct while permitting secular conduct.'" Op. at 20 (quoting *Tingley*, 47 F.4th at 1088,

8

and citing *Fulton*, 593 U.S. at 534-35; *Lukumi*, 508 U.S. at 542-43). And as a neutral and generally applicable law, the WLAD's public accommodations provision therefore only incidentally burdens the Spa's free exercise right under the very cases the Spa cites, *Tandon*, *Fulton*, *Fellowship of Christian Athletes*, and *Youth 71Five Ministries*. The Spa's petition for rehearing en banc on its free exercise argument should be denied.

**B.      The Majority Did Not Err by Considering the Spa's Commercial Nature as One Fact Among Many Within Its First Amendment Analysis**

The Spa next accuses the majority of erroneously rejecting the Spa's First Amendment Claims "based in part on the commercial nature of the Spa." Pet. at 12. The Spa cites no language from the opinion to support its argument; it merely cites to a range of pages. *See id.* (citing Op. 15, 24-26, 28). But, reviewing those pages, it is difficult to see how the Spa can read the majority to hold that "commercial conduct devalues First Amendment freedoms." Pet. at 7. Nowhere does the majority even insinuate that the Spa lacks First Amendment protection just because it is a for-profit entity. On the contrary, the Spa's choice to operate as a business open to all who are willing to pay—except non-operative

transgender women—informs, but does not determine, the majority's holding that the First Amendment does not protect the Spa.[1]

On page 15 of the opinion, for instance, the Spa could be referring to the majority's statement that "[r]ather, 'our cases have held that the government may sometimes 'requir[e] the dissemination of purely factual and uncontroversial information,' particularly in the context of 'commercial advertising.''" Op. at 15 (quoting *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) (quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995))). The majority then applied this legal principle to the Spa's entry policy, which states, "Biological women are welcome. It is the policy of Olympus Spa not to discriminate on the basis of race, color, national origin, sex, age or disability in its programs or activities, as required by applicable laws and regulations." *Id.* at 8, 14-19.

The majority astutely recognized that "biological women are welcome" advertised and promoted the Spa's policy to discriminate based on gender identity, but inaccurately described the Spa's agreement not to discriminate based on gender identity expressed in the second sentence of its entry policy.

---

[1] The HRC uses the term "non-operative" transgender women to refer to transgender women who have not undergone, and may choose not to undergo, gender confirmation surgery.

*Id.* at 16 ("Although the Spa's alterations to its admissions practices necessitated alterations to its written policy, the HRC merely required the Spa to change its published entry policy so that it accurately described those new, WLAD-compliant practices."). The majority held that the HRC did not infringe on the Spa's free speech rights because "disseminating purely factual information, even if it 'includes elements of speech,' is a 'far cry from . . . compelled speech.'" *Id.* at 15 (quoting *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*), 547 U.S. 47, 61-62 (2006)).

The fact that the Spa presented its entry policy in a commercial context played little, if any, role in the panel opinion. In *FAIR*, the Supreme Court held that the government could compel law schools to give access to military recruiters, which would include posting factual emails and notices related to job recruitment. *FAIR*, 547 U.S. at 55, 61-65. These postings were not commercial in nature, unlike the Spa's entry policy. Under *FAIR*, *303 Creative*, and *Hurley*, the state may require that factual information be communicated, whether in a commercial context or not.

The Spa next cites pages 24-26 of the majority opinion. Pet. at 12. There, the Spa could be referring to the majority's description of the Spa as a "business" and its services as "commercial" in analyzing whether the Spa is an intimate

11

association. *See, e.g.*, Op. at 25, 26 ("Although the Spa might not be a 'large business enterprise,' it is nevertheless a business, open to all women except preoperative transgender women"; "Patrons 'are not members of any organized association; they are patrons of the same business establishment'"; "the Spa is a local business with two locations"; "nudity alone does not transform a place of business into an intimate association"; "patrons purchase commercial services at the Spa without regard to the identities of other patrons") (quoting *Jaycees*, 468 U.S. at 620, and *Stanglin*, 490 U.S. at 24 (emphasis omitted)). These references in no way indicate that the business or commercial nature of the Spa and its services alone stripped the Spa of its right to intimate association. In fact, the majority *agreed* with the Spa that the right to intimate association may protect a business's commercial services. *Id.* at 26 (citing *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1221 (9th Cir. 2012)).

Rather, the commercial nature of the Spa was just one factor in the majority's larger "intimacy" analysis. As the majority correctly reasoned, the Spa is not an intimate association because the Spa serves any woman who is willing to pay—except non-operative transgender women—and is therefore not sufficiently selective to be an intimate association that the First Amendment

12

protects. *Id.* at 24, 26. Nor does the Spa exist to host or promote intimate associations among its members or customers, unlike the Jaycees or the commercial business Roommate.com. Op. at 24-26. Based on these undisputed facts, the Spa lacks the hallmarks of an intimate association: relative smallness, high degree of selectivity in decisions to begin and maintain the association, and seclusion from others in critical aspects of the relationship. *Id.* at 24 (citing *Jaycees*, 468 U.S. at 620).

Finally, the Spa cites to page 28 of the opinion. Pet. at 12. There, the Spa may be referring to the majority's statement that whereas "the Boy Scouts offered consistent instruction and engagement with a stable membership, in 'activities like camping, archery, and fishing' designed to 'inculcate [youth members] with the Boy Scouts' values, . . . the Spa's commercial services are not similarly designed to 'transmit . . . a system of values.'" Op. at 27-28 (quoting *Dale*, 530 U.S. at 649-50). Here again, the key factor in the majority's analysis is not the Spa's commercial nature, but the fact that the Spa operates in a way that is not an expressive association that the First Amendment protects. *Id.* at 27. The Spa may provide services that "restore and rejuvenate women's physical health as well as spiritual health," but its employees and customers do not gather at the Spa to discuss or advance any protected ideas or beliefs. *Id.*

13

The majority in no way held that the Spa's commercial nature strips it of all First Amendment rights. The majority faithfully followed binding case law in rejecting the Spa's First Amendment claims. The Spa's request for en banc review should be denied.

**C.    The Majority Correctly Held that the Spa's Free Speech Claim Fails Because the Spa's Entrance Policy Furthers Unlawful Discriminatory Conduct, Not Protected Speech**

The Spa mistakenly believes that its discriminatory entry policy—which stated to the public that "Biological women are welcome"—communicates an idea that the Free Speech Clause protects. Pet. at 13-14. As with all of the Spa's other arguments, the majority correctly rejected this one under settled Supreme Court precedent. Op. at 16-17.

The Spa argues (again) that the Court should view the Spa more like a beauty pageant. But the majority expressly distinguished the Spa's discriminatory entry policy, which is not protected speech, from a beauty pageant's protected message. Op. at 18-19. "Unlike the [Spa's] entry policy, which is, at most, only incidentally expressive, the beauty pageant in *Green* was deemed purely expressive activity, akin to the parade in *Hurley*." Op. at 18 (citing *Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 780 (9th Cir. 2022)). Beauty pageants are like the "theater, cinema, or the Super Bowl halftime

14

show, . . . combin[ing] speech with live performances such as music and dancing to express . . . the 'ideal vision of American womanhood.'" *Green*, 52 F.4th at 780.

And the majority's distinction between the beauty pageant's expressive activity and the Spa's lack of expression is dispositive for First Amendment purposes. The Free Speech Clause protected the pageant's "natural born female" language because that phrase promotes, and is integral to, the pageant's core message. *Id.* at 780-81. The First Amendment does not protect the Spa's "biological women are welcome" entry policy, however, because it promotes the Spa's unlawful exclusionary *conduct* based on gender identity; it is unlawful discrimination perpetrated through words that an antidiscrimination statute may regulate. Op. at 16 ("'[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'") (quoting *FAIR*, 547 U.S. at 62).

This speech-conduct distinction is fatal to the Spa's argument here. Based on these settled First Amendment principles, the majority was right in holding that HRC may, under the WLAD's prohibition of discriminatory conduct, require the Spa to remove the discriminatory portion of its entry policy, just as

15

an employer could be required to take down a "White Applicants Only" sign. Op. at 15-16 (quoting *FAIR*, 547 U.S. at 62).

Lacking other options, the Spa finally argues for an interpretation of the WLAD's public accommodations provision that would allow it to maintain the discriminatory language on its website because the online policy "does not turn someone away at the door." Pet. at 14-15. The Spa's distinction here is absurd. The HRC may regulate the words the Spa uses to exclude particular customers because of who they are, whether posted on its own website or spoken by staff at the door.

## IV. CONCLUSION

The Panel correctly applied well-established law from this Circuit and the Supreme Court, and nothing about the Spa's arguments warrant further review. The Spa's petitions for rehearing and rehearing en banc should be denied.

///

///

///

16

RESPECTFULLY SUBMITTED on this 20th day of August, 2025.

NICHOLAS W. BROWN
Attorney General

*s/ Neal Luna*
NEAL LUNA, WSBA No. 34085
Assistant Attorney General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-287-4189
neal.luna@atg.wa.gov

17

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 23-4031

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 3,489 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Neal Luna **Date** 8/20/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*